CASE NO. 9:24-cv-80499-RLR/REINHART

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

JTC SKYWAVE INVESTMENTS LTD,
and HARALD McPIKE,

        Plaintiffs,

                                            CASE NO. 9:24-cv-80499-RLR/REINHART

v.

ANDREW N. MART, DEANNA BOIES,
LUMINESCENCE LLC, LUMINESCENCE
LLC, and LUMINASTRA LLC,

        Defendants.

_____/

## MOTION TO DISMISS
## FOR FORUM NON CONVENIENS AND LACK OF PERSONAL JURISDICTION;
## AND, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM FOR RELIEF

HomerBonner

1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

Luis Delgado, Esq.
ldelgado@homerbonner.com
Christopher J. King, Esq.
cking@homerbonner.com
Antonio M. Hernandez, Jr. Esq.
ahernandez@homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

## <u>Table of Contents</u>

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

I.    Introduction .......................................................................................................... 1

II.   Allegations of the Complaint. ............................................................................... 1

III.  Additional Facts for Jurisdictional and Forum Non Conveniens Defenses ...................... 2

IV.   Argument ............................................................................................................ 4

    A.   The Court should dismiss this case for forum non conveniens. ........................................ 4

        1.   The Bahamas and Nevis are adequate and available forums. ...................................... 5

        2.   The private and public factors strongly favor dismissal. ............................................. 6

        3.   Plaintiffs face no undue inconvenience or prejudice in reinstating action. ............... 10

    B.   The Court lacks personal jurisdiction over Mart, Boies, Luminescence LLC (Illinois), and Luminastra, LLC. ........................................................................................................ 10

        1.   The Court lacks personal jurisdiction under Florida's long-arm statute. .................. 11

        2.   Plaintiffs also fail to satisfy federal due process requirements. ................................ 13

    C.   The Complaint fails to state a claim for relief. ......................................................... 15

        1.   The Complaint is a prohibited shotgun pleading that fails to provide required specificity for claims based on alleged fraud. .......................................................................... 15

        2.   The conspiracy count is barred by the Intracorporate Conspiracy Doctrine. ............. 19

V.    Conclusion .......................................................................................................... 19

i

CASE NO. 9:24-cv-80499-RLR/REINHART

## Table of Authorities

**Cases**

*Am. United Life Ins. Co. v. Martinez,*
  480 F.3d 1043 (11th Cir. 2007)................................................................................ 18

*Archut v. Ross Univ. Sch. of Veterinary Med.,*
  No. 10-1681, 2013 U.S. Dist. LEXIS 156024, 2013 WL 5913675 (D.N.J. Oct. 30, 2013)........ 6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................. 15

*Banco Latino v. Gomez Lopez,*
  17 F. Supp. 2d 1327 (S.D. Fla. 1998).................................................................... 6, 9

*Barmapov v. Amuial,*
  986 F.3d 1321 (11th Cir. 2021)........................................................................... 16, 17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................. 15

*BNSF R. Co. v. Tyrrell,*
  581 U.S. 402 (2017).................................................................................................. 14

*Bristol-Myers Squibb Co. v. Superior Ct. of Cali.,*
  582 U.S. 255 (2017).................................................................................................. 13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
  116 F.3d 1364 (11th Cir. 1997)................................................................................ 16

*Certified Collectibles Grp., LLC v. Globant, LLC,*
  No. 8:19-cv-1962-SDM-AEP, 2021 U.S. Dist. LEXIS 62554 (M.D. Fla. Mar. 31, 2021)........ 17

*Copperweld Corp. v. Indep. Tube Corp.,*
  467 U.S. 752 (1984).................................................................................................. 19

*Da Rocha v. Bell Helicopter Textron, Inc.,*
  451 F. Supp. 2d 1318 (S.D. Fla. 2006).................................................................. 5, 7

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014).................................................................................................. 14

*Ford v. Brown,*
  319 F.3d 1302 (11th Cir. 2003).................................................................................. 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U. S. 915 (2011)............................................................................................ 13, 14

*Hollins v. Fulton Cnty.,*
  No. 10-10954, 2011 WL 1331978 (11th Cir. Apr. 7, 2011)...................................... 19

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,*
  421 F.3d 1162 (11th Cir. 2005)........................................................................... 11, 12

*In re Managed Care Litig.,*
  150 F. Supp. 2d 1330 (S.D. Fla. 2001)................................................................... 19

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945).................................................................................................. 13

*Iragorri v. United Techs. Corp.,*
  274 F.3d 65 (2d Cir. 2001)......................................................................................... 6

*Lambert v. Melia Hotels Int'l S.A.,*
  526 F. Supp. 3d 1207 (S.D. Fla. 2021)..................................................................... 5

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

*Leon v. Millon Air, Inc.*,
  251 F.3d 1305 (11th Cir. 2001) ............................................................................ 5
*Mallory v. Norfolk S. Ry.*,
  600 U.S. 122 (2023) ................................................................................... 13, 14
*Mizarro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) .......................................................................... 15
*MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*,
  No. 20-21573-Civ-Scola, 2021 U.S. Dist. LEXIS 19384 (S.D. Fla. Feb. 2, 2021) .................... 10
*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ..................................................................................... 5, 6
*Prunty v. Arnold & Itkin LLP*,
  753 F. App'x 731 (11th Cir. 2018) ...................................................................... 11
*Robb v. Rahi Rea Est. Holdings LLC*,
  No. 10-81474-CIV, 2011 WL 2149941 (S.D. Fla. May 23, 2011) ........................................ 19
*Sigalas v. Lido Maritime, Inc.*,
  776 F.2d 1512 (11th Cir. 1985) ........................................................................ 7, 9
*Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*,
  549 U.S. 422 (2007) ....................................................................................... 4
*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) ............................................................... 10, 11, 12
*Tello v. Dean Witter Reynolds, Inc.*,
  494 F.3d 956 (11th Cir. 2007) ...................................................................... 15, 17
*Turner v. Costa Crociere S.P.A.*,
  9 F.4th 1341 (11th Cir. 2021) ............................................................................ 4
*United States ex rel. Clausen v. Lab. Corp. of Am.*,
  290 F.3d 1301 (11th Cir. 2002) .......................................................................... 15
*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ..................................................................... 10, 13
*Yeyille v. Miami Dade Cnty. Pub. Sch.*,
  643 F. App'x 882 (11th Cir. 2016) ...................................................................... 16

**Statutes**
§ 48.193(1)(a), Fla. Stat. ........................................................................... 11, 13
§ 48.193(2), Fla. Stat. .................................................................................. 13

**Rules**
Federal Rule of Civil Procedure 12(b)(2) .................................................................. 1
Federal Rule of Civil Procedure 8 ........................................................................ 15
Federal Rule of Civil Procedure 9(b) ............................................................... 15, 17

iii

CASE NO. 9:24-cv-80499-RLR/REINHART

Defendants Andrew N. Mart ("Mart"), Deanna Boies ("Boies"), Luminescence, LLC (registered in Illinois), Luminescence, LLC (registered in Florida), and Luminastra, LLC move to dismiss for forum non conveniens and lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); and, alternatively, for failure to state a claim for relief under Rule 12(b)(6).

## I.   Introduction

Plaintiffs Harald McPike and his company JTC Skywave Investments Ltd. ("JTC") are foreign partes with no ties to Florida or the United States. They have sued five U.S. citizens who themselves have few if any meaningful ties to Florida. The only reason the case is here is to inconvenience and prejudice Defendants by keeping them separated from the vast majority of relevant witnesses and evidence located in the Bahamas and Nevis. This case, purportedly a common law fraud action based on a Call Option Agreement governed by Nevis and St. Kitts law, has no business being in the United States. This Court should dismiss this case for forum non conveniens, lack of personal jurisdiction and, alternatively, for failure to state a claim for relief.

## II.   Allegations of the Complaint.

JTC is a British Virgin Islands entity whose alleged "ultimate owner" is Harald McPike, an Austrian citizen living in the Bahamas. JTC alleges that it had an alleged ownership stake of 48% in Luminastra Ltd., a nonparty. Another nonparty, Iridescence, LLC, allegedly was the other owner. JTC alleges it entered into a Call Option Agreement with Luminastra, Ltd. in September 2019 providing JTC with the option to buy additional equity in a series of transactions for as much as $12 million, increasing JTC's alleged ownership stake in Luminastra Ltd. to as high as 56%. Compl. ¶¶ 19, 25.

The Call Option Agreement, incorporated by reference in the Complaint (ECF No. 1-3), grants JTC the option to require Luminastra Ltd. to sell stock to JTC pursuant to an attached schedule in return for a maximum 60% interest in Luminastra Ltd. ECF No. 1-3 at Art. II. The agreement is signed solely by Defendant Deanna Boies, as Director of Luminastra Ltd. JTC is not a signatory. The agreement contains a choice of law clause requiring that all "matters . . . whether sounding in contract tort, or statute," be governed by the law of St. Kitts and Nevis. *See id.* ¶ 5.1.

1

CASE NO. 9:24-cv-80499-RLR/REINHART

Plaintiffs allege Mart represented that Luminastra Ltd. wholly owned a number of subsidiaries, and that Mart supposedly told JTC to make payment under the Call Option Agreement to two of them, Defendants Luminescence, LLC and Luminastra, LLC. Compl. ¶¶ 22, 30, 42-45. JTC alleges it sent more than $12 million under the agreement. *Id.* ¶ 29.

The Complaint alleges Luminescence and Luminastra, LLC were not owned by Luminastra Ltd., however, but by Mart. Compl. ¶¶ 5, 40. JTC claims that it exercised its alleged option on $12 million in funding, but its demands for the shares were supposedly refused, since McPike had not provided full due diligence. *Id.* ¶ 36. JTC alleges that Mart and Boies diverted the funding under the Call Option Agreement. *Id.* ¶¶ 5, 33-37, 41.

The Complaint also alleges that Luminastra Ltd. was "intended" to provide "high frequency automated trading services" to QuantRes Asset Management Ltd. ("QuantRes"), a trading firm "affiliated" with McPike. *Id.* ¶ 26. When disputes allegedly arose over the Call Option Agreement, McPike supposedly gave instructions to an entity thought to be ultimately owned by Luminastra Ltd., QuantumRoot, to "disentangle its operations" from QuantRes' trading operations, and to transfer a "project known as 'ILQ.'" *Id.* ¶ 49. Mart, through a German attorney, allegedly refused unless QuantRes paid various invoices in amounts of 394,517 Euros, 40,000 Euros, 10,000 British Pounds, and $44,603, "to QuantumRoot" and other European "Mart-related entities." *See id.* ¶¶ 51-58. JTC and McPike claim the invoices supposedly show Mart misrepresented Luminastra Ltd.'s corporate structure.

The Complaint includes two common law counts—one combining claims of supposed "Fraud and Fraudulent Inducement" solely against Mart, and another for civil conspiracy against Mart, Boies, Luminescence, and Luminastra, LLC.

### III.    Additional Facts for Jurisdictional and Forum Non Conveniens Defenses

Though the Complaint alleges Mart "has an address" in Port St. Lucie, Florida, the address is in fact his father's. *See* Decl. of Andrew Mart ¶ 5, attached hereto as Exhibit A ("Mart Decl."). Mart is domiciled fulltime in California, where he moved after living almost three decades in the Bahamas, where McPike has long lived. *See* Mart Decl. ¶¶ 2-3, 7. The Call Option Agreement on which Plaintiffs premise their claim arose out of software and technologies Mart wrote and developed himself in the Bahamas. *See* Mart Decl. ¶ 11. The

2

CASE NO. 9:24-cv-80499-RLR/REINHART

alleged subsidiaries of Luminastra Ltd. mentioned throughout the Complaint, three of which are named Defendants in this case, were entities Mart formed around the world to operate Mart's various investment projects using his software and hardware technologies. *See* Mart Decl. ¶ 12.

Mart asked family friend Deanna Boies to act as manager of certain domestic entities, including Luminescence LLC (originally registered in Illinois), Luminescence LLC (originally registered in Florida), and Luminastra, LLC. *See* Decl. of Deanna Boies ¶ 4, attached hereto as Exhibit B ("Boies Decl."). Boies agreed. *Id.* She has never received any money for her services (beyond de minimis payments for yardwork in Illinois). Boies Decl. ¶ 6. Boies, who lives and works fulltime in Illinois, has never talked to McPike and has never received any money from McPike or any of his companies. Boies Decl. ¶¶ 2, 7-8. Boies had no involvement in the negotiation or drafting of the Call Option Agreement and no involvement in the operation of Mart's entities, beyond executing agreements and documents. Boies Decl. ¶ 5.

In the years leading up to 2019, Mart's companies were providing services to McPike's Bahamian commodity futures trading funds and invoicing for the work. Mart Decl. ¶ 15. McPike in turn was funding Mart's projects. *Id.* The Call Option Agreement was a way for McPike to acquire a 60/40 nonvoting ownership interest in the projects. Mart Decl. ¶ 16. The proposed agreement called for McPike continuing to fund Mart's projects in return for the services provided to McPike's funds, with the ownership interests increasing as funding levels were reached. *Id.* Mart and McPike negotiated the terms of the agreement in the Bahamas. Mart Decl. ¶ 17.

Mart formed Luminastra Ltd. in September 2019 in Nevis with the expectation that it would act as the entity under which Mart's various projects and certain relevant entities would be consolidated. Mart Decl. ¶ 18. Pursuant to Nevis law, Luminastra Ltd. appointed a local Registered Agent, initially AMS Trustees (Nevis) Limited, and later Bolder Corporate Services (Nevis) Limited. Mart Decl. ¶ 19. Nevis's "Know Your Customer" laws require due diligence before the Registered Agent is authorized to issue shares in a Nevis company. Mart Decl. ¶ 20. Mart complied and, on September 27, 2019, the Registered Agent issued one Class "B" voting share to Iridescence, LLC, one of Mart's companies. *Id.*

3

CASE NO. 9:24-cv-80499-RLR/REINHART

The Call Option Agreement was signed by Boies as an officer of Luminastra, Ltd. on or about the same day. The parties were Luminastra Ltd. and McPike's British Virgin Islands company, JTC. Mart was an officer of JTC at that time. Only Luminastra Ltd. signed the Agreement.

In 2019, 2020, and 2021, Luminastra, Ltd. delivered invoices to McPike's companies in the Bahamas in amounts corresponding to the funding schedule from the Call Option Agreement. Mart Decl. ¶ 23. The invoices called for payment to be remitted to Luminastra, LLC at an address in Nevis. Mart Decl. ¶ 23, Ex. 1. McPike wired payments from different offshore accounts to a Citibank account owned by Luminastra, LLC. Mart Decl. ¶ 24. None of the payments came from JTC. Mart Decl. ¶ 27.

Mart told McPike that he would have to provide full due diligence in order for the Registered Agent to issue shares to JTC in accordance with the Call Option Agreement. Mart Decl. ¶ 29. But McPike refused to provide the necessary information. As a result, no shares could lawfully be issued to JTC in Nevis, and McPike ultimately rejected JTC's option to acquire shares in Luminastra, Ltd. Mart Decl. ¶ 30.

All of Mart's agreements with McPike were negotiated or performed (and ultimately breached) by McPike in the Bahamas, where they worked closely together for over 30 years. Mart Decl. ¶ 31. The Bahamas is where Mart conceived and created the software and hardware technologies, which McPike used to accumulate tremendous personal wealth, and which McPike continues to use to this day while refusing to pay for the services. *Id.*

## IV.   Argument

### A.   The Court should dismiss this case for forum non conveniens.

This Court "[m]ay dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 432 (2007). Dismissal is appropriate where "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1347 (11th Cir. 2021) (internal quotation marks and citation omitted).

4

CASE NO. 9:24-cv-80499-RLR/REINHART

**1. The Bahamas and Nevis are adequate and available forums.**

In this case there are two far more convenient forums than this Court or any other American court—the Bahamas and Nevis. Both are "available" and "adequate" forums. The alternative forum is "available" when "[t]he foreign court can assert jurisdiction over the litigation sought to be transferred," and it is adequate where the "[f]orum offers at least some relief." *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311-12 (11th Cir. 2001) (explaining "[a]n adequate forum need not be a perfect forum . . . and courts have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum") (citations omitted). The Bahamas or Nevis are available forums, as Defendants have stipulated to service of process and to the jurisdiction of the courts there and have stipulated to the relation back of a timely refiled case for statute of limitations purposes. Mart Decl. ¶¶ 38-41; Boies Decl. ¶¶ 9-12

As for adequacy, the courts of Nevis and the Bahamas are more than capable of adjudicating an alleged fraud dispute over an Call Option Agreement negotiated in the Bahamas, controlled by Nevis law, and calls for performance in the Bahamas and Nevis. An alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary." *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1322 (S.D. Fla. 2006) (citing *Leon*, 251 F.3d at 1312). Moreover, because forum non conveniens protects against forum shopping plaintiffs, an adverse change in the law against a plaintiff is not a factor, as long as the forum offers some remedy that is more than "no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). The Supreme Court has recognized that only in "rare circumstances" will an alternative forum be inadequate, "[w]here the remedy offered . . . is clearly unsatisfactory," or "where the alternative forum does not permit litigation of the subject matter of the dispute." *Id*. at 254 n.22. Federal courts have determined that both the Bahamas and Nevis recognize tort and contract theories and provide remedies assuming the claims could be proven. *E.g.*, *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1215 (S.D. Fla. 2021) (finding "[t]he Bahamas is an adequate alternative forum" in a slip and fall case); *Zarrelli v. Ross Univ. Sch. of Veterinary Med.*, No. 22 C 1277, 2022 U.S. Dist. LEXIS 161182, at *5-6 (N.D. Ill. Sept. 7, 2022) (finding "St. Kitts is an adequate alternative forum in this case because Ms. Zarrelli's breach of contract and

CASE NO. 9:24-cv-80499-RLR/REINHART

negligence claims are cognizable there"); *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681, 2013 U.S. Dist. LEXIS 156024, 2013 WL 5913675 (D.N.J. Oct. 30, 2013), *aff'd* 580 F. App'x 90, 91 (3d Cir. 2014) (finding St. Kitts's legal system was derived from the British common law system and that it "recognizes claims for breach of contract, and provides detailed mechanisms for enforcing contracts in its courts"); *Sevison v. Cruise Ship Tours*, 37 V.I. 231, 1997 WL 530267 at *3 (D.V.I. 1997) (concluding "the type of negligence claims asserted by plaintiffs" were "causes of action that the courts of [St. Kitts] recognize"). In an abundance of caution, the Defendants have retained experts in Nevis law and Bahamian law. Frank E. Walwyn is a member of the bar of St. Christopher (St. Kitts) and Nevis since 2000 and opines that in this case a Nevis court would assert jurisdiction over this case, the causes of action of the complaint are recognized in Nevis, and there are remedies available. *See generally* Decl. of Frank E. Walwyn, Exhibit C.[1]

     **2.      The private and public factors strongly favor dismissal.**

     Private interests balance the plaintiff's initial forum choice against the "[r]elative ease of access to sources of proof; . . . availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; and . . . all other practical problems that make trial of a case easy, expeditious and inexpensive." *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331-32 (S.D. Fla. 1998) (citation omitted). The traditional "presumption" in favor of plaintiff's choice of forum "applies with less force when the plaintiff or real parties in interest are foreign." *Piper Aircraft*, 454 U.S. at 255. The more it appears that the plaintiff's choice of forum was "motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another . . . court[]." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

---

[1] Given the short time frame for this motion, Defendants have not yet received the declaration from their Bahamian counsel but expect to soon. Though the declaration is unnecessary at this point since adequacy is presumed, *see Da Rocha*, 451 F. Supp. 2d at 1322, Defendants reserve the right to file the declaration with their Reply brief, if necessary, or otherwise seek leave to supplement this motion with the declaration.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1200 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

In this case, Plaintiffs are entitled to no deference. They are foreign citizens with no ties whatsoever to Florida or, apparently, the United States. They claim no injury in the United States, entered into no contracts here, and have no assets here. The action was filed in Florida to prejudice and inconvenience Defendants by separating them from key witnesses in the Bahamas and making it extremely difficult for them to obtain discovery. *See* Mart Decl. ¶¶ 33a.-n. (identifying numerous witnesses in the Bahamas). McPike also benefits from avoiding the unfavorable publicity of having to sue in his hometown. Under the circumstances, Plaintiffs' choice of forum is entitled to little or no deference. *Da Rocha*, 451 F. Supp. 2d at 1323 (finding "Plaintiffs' choice of forum is entitled to little deference" when the "archetypal foreign plaintiff bring[s] her foreign tort claim to American courts to secure relief more generous than she would get under the law of her homeland") (citing *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1520 (11th Cir. 1985)).

The remaining private interests overwhelmingly support dismissal. "Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). The Court "[m]ust scrutinize the substance of the dispute . . . to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Id.* (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)). This case is a fraudulent inducement case between two longtime associates whose relationship stretches back three decades, during which time Mart developed a sophisticated risk management software and other software and hardware technologies that made McPike extremely rich. The crucial evidence begins with Mart's creation of the software and hardware technologies primarily in the Bahamas, and McPike's use of that software and hardware technology for his companies' profit and, in turn, his personal gain. It continues with the negotiations and understandings surrounding McPike's option to acquire an ultimate 60/40 nonvoting ownership interest in Mart's projects and entities, and McPike implementing Mart's technologies after having funded the projects at agreed on levels. It ends with McPike sabotaging the agreement by refusing to provide the necessary due diligence under Nevis and St. Kitts law, rejecting the option, and refusing to pay for services Mart provided and continues to provide to McPike's companies to this day.

7

CASE NO. 9:24-cv-80499-RLR/REINHART

Further, McPike's purported claim to $10 million (or more) in damages makes McPike's and his companies' profits from use of Mart's technologies relevant.

All of that evidence is in the Bahamas, as is evidence of McPike's companies and their ongoing use of Mart's software and technologies. The overwhelming majority of witnesses to Mart and McPike's longtime relationship, the extraordinary services and other benefits Mart provided to McPike both recently and over three decades, their negotiations of the Call Options Agreement, the payments made under the agreement, and the events surrounding its ultimate breach, are in the Bahamas. *See* Mart Decl. ¶ 32. Mart identifies over a dozen primary witnesses, and 23 total potential witnesses, who are in the Bahamas. Mart Decl. ¶ 33. They include not only McPike himself but the numerous associates and entities that McPike used to run his operations from the Bahamas. Virtually all of them are outside the jurisdiction of this Court, and many who used to work for McPike are outside the control of the parties. There are also at least 10 key witnesses in Nevis who can testify to the creation of Luminastra, Ltd., McPike's failure to provide crucial due diligence, and the reasons why McPike made the exercise of his option impossible. Mart Decl. ¶ 34.

There is no evidence in Florida because nothing happened here. The only meaningful witnesses are Greenspoon Marder lawyers who represented Defendants in this action before removal, and who represented Mart's Nevis entities and corresponded with McPike's agent Bob Martyn in 2022 and January 2023. *See* Mart Decl. ¶ 35. Their testimony and importance are substantially limited by the attorney-client privilege. The only other significant witnesses in the United States are the named Defendants. Mart is in California, and it is as convenient for him to travel to the Bahamas where he lived for three decades, or Nevis, where he has business contacts, as it is for him to travel to Florida. *See* Mart Decl. ¶¶ 2-3. Boies is in Illinois and has limited knowledge of this case. She has never spoken to McPike, never received any money from McPike or JTC, and was not involved in the negotiation or drafting of any agreement Mart ever made with McPike. *See* Boies Decl. ¶¶ 5-8. She has nothing to do with this case.

Accordingly, numerous witnesses and important evidence are located in the Bahamas and Nevis. By comparison, few witnesses and no evidence are in Florida, and only two other important witnesses, Mart and Boies, are in the United States. Under these

8

CASE NO. 9:24-cv-80499-RLR/REINHART

circumstances, McPike "represents the archetypal foreign plaintiff bringing h[is] foreign tort claim to American courts to secure relief more generous than []he would get under the law of h[is] homeland." *See Sigalas*, 776 F.2d at 1520. The Bahamas and Nevis have "strong contacts with this case. America has virtually none." *Id*. Therefore, the private factors strongly favor dismissal.

The "public interests" look to "the sovereign's interest in deciding the dispute, the administrative burdens posed by trial, and the court's application of law with which it is not familiar." *See Banco Latino*, 17 F. Supp. 2d at 1332. Florida has no interest in this dispute, while the Bahamas' interest in deciding an alleged fraud claim by one of its citizens is strong. The Bahamas is where McPike's and Mart's relationship was formed (and continued for three decades), where the agreements at issue were negotiated, where many of the services Mart provided were performed, where much of the software and hardware technologies were developed, and the place where McPike's payments were made or initiated. Mart Decl. ¶¶ 28, 31-32. All the communications that form the alleged fraud claim happened in the Bahamas, and any supposed injury McPike or JTC could claim happened in the Bahamas.

Nevis also has a strong interest. Nevis is where McPike's option was to be exercised and performed. The Complaint, moreover, is premised on Plaintiffs' alleged entitlement of shares in a Nevis company under the Call Option Agreement. Matters concerning the organization and administration of a Nevis company "are generally treated as matters ideally suited to be determined in the place in which the company has been incorporated. Issues of the internal affairs and management of a company are best suited to the jurisdiction in which the company is incorporated." Walwyn Decl. ¶ 20.

In terms of the "application of law with which [this Court] is not familiar," the Call Option Agreement is governed by Nevis and St. Kitts law. Indeed, crucial to this case is understanding Nevis' "Know Your Customer" due diligence laws. If for some reason the choice of law provision was not enforced, the law of the Bahamas, where the alleged injury occurred, would almost certainly govern in its place. The applicable law is highly unlikely to be Florida. In any event, Defendants would incur unnecessary expenses and burdens in

having to litigate in this forum under an unfamiliar foreign law. Accordingly, the public interests also strongly favor dismissal.

### 3.  Plaintiffs face no undue inconvenience or prejudice in reinstating action.

Given that McPike is a long term resident of the Bahamas and has substantial financial resources, he faces no inconvenience or prejudice in reinstating the case in the Bahamas, his hometown. Nor can he complain about reinstating this case in Nevis after entering into a Call Option Agreement that could only be exercised in Nevis and governed by Nevis and St. Kitts law. Defendants have furthermore stipulated that a timely refiled case in the Bahamas or Nevis will relate back to the filing of this action for purpose of the statutes of limitation, and will accept a judgment in either the Bahamas or Nevis. Mart Decl. ¶¶ 38-41; Boies Decl. ¶¶ 9-12. This factor also favors dismissal.

Because all the factors weigh in favor of dismissal, and none support litigating the case in the United States, this Court should dismiss the case for forum non conveniens.

### B.  The Court lacks personal jurisdiction over Mart, Boies, Luminescence LLC (Illinois), and Luminastra, LLC.

A motion to dismiss under Rule 12(b)(2) tests the court's ability to exercise its power over a defendant. Plaintiffs bear the burden of "[a]lleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction." *MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*, No. 20-21573-Civ-Scola, 2021 U.S. Dist. LEXIS 19384, at *8 (S.D. Fla. Feb. 2, 2021) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006)). If the plaintiff satisfies that burden with well-pleaded facts alleged in the complaint, the defendant may submit "affidavit evidence" in support of its position. *United Techs.*, 556 F.3d at 1274. In that case "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (citations omitted). The Court can therefore consider facts outside the complaint in resolving a motion to dismiss for lack of personal jurisdiction.

This Court determines personal jurisdiction over a non-resident Defendant initially under the state long-arm statute. *See Snow*, 450 F.3d at 1317. Plaintiffs must also satisfy the federal Due Process clause. *See id.* Plaintiffs have not and cannot satisfy either standard.

CASE NO. 9:24-cv-80499-RLR/REINHART

### 1.  The Court lacks personal jurisdiction under Florida's long-arm statute.

The Florida long-arm statute provides in relevant part that "[a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of" nine enumerated acts. § 48.193(1)(a), Fla. Stat. The Complaint relies primarily on two enumerated acts: "Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," and "Committing a tortious act within this state." Compl. ¶¶ 10, 13, 16, 17 (citing § 48.193(1)(a)(1), (2), Fla. Stat.). But these are conclusory allegations without any supporting facts that fail to satisfy Plaintiffs' burden. *See Snow*, 450 F.3d at 1318.

There are only two references to Florida in the material allegations. The first is that Mart supposedly represented that a nonexistent entity called Luminescence Ltd. "with a corporate address in Boca Raton" was a wholly owned subsidiary of Luminastra, Ltd. But merely making an alleged false reference to a Florida entity that did not exist is not committing a tortious act in Florida. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018) (holding that § 48.193(1)(a)(2) "[r]equires that the defendant have committed 'a tortious act within this state,'" and so requires "[t]hat the tort be committed in Florida") (citations omitted). Moreover, Mart has confirmed that all the communications he had with McPike occurred in the Bahamas. Mart Decl. ¶ 17. Nor does the allegation satisfy the carrying-on business provision of the long-arm statute. That provision "[r]equires that a defendant *conduct business* in Florida." *Horizon Aggressive Growth*, *L.P. v. Rothstein-Kass*, *P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (emphasis added). Merely making an allegedly false reference to a nonexistent business in Florida is insufficient. *See id.* (holding that "[c]onducting business from a California office *as if* in Florida is insufficient under the plain text of the statute") (emphasis in original).

The other alleged "act" supposedly involving Florida is that in 2018 and 2019, Mart allegedly "convinced McPike to invest $2 million, for a total of $4 million in 'Luminescence', directing that payments be made to Luminescence LLC, with an address of 2503 Dundee Drive, Tallahassee, Florida, which was at that time Boies' home address." Compl. ¶ 45. This

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

cannot be a "tortious act" committed in Florida because there is no allegation that Mart was ever in Florida at the time, no allegation that McPike actually made any payment to the address in Tallahassee, and no alleged cause of action arising out of those payments, which would have preexisted both the creation of Luminastra, Ltd. in September 2019 and the Call Option Agreement. The only payment in 2019 tied to any alleged cause of action was a supposed $3 million payment in October 2019, which was invoiced for payment to an address in Nevis. *See* Compl. ¶ 29; Mart Decl. ¶ 23. Both Mart and Boies confirm that neither they nor any other Defendant received any payments from McPike or his companies in Florida. Mart Decl. ¶ 25. Plaintiffs therefore do not satisfy the "tortious act" provision.

As for the other provision, in order to "'carry[] on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon*, 421 F.3d at 1167. Even if Mart had told McPike to send two payments to Florida and McPike sent the payments there (and there is no allegation or evidence that he did), two isolated payments would not constitute "conducting business" in Florida. *See id.* Mart confirms that Luminescence's only assets were out-of-state bank accounts, neither McPike nor JTC never made any payments to those accounts, and the Florida-registered Luminescence conducted virtually no business. Mart Decl. ¶¶ 13, 24-26. The Complaint contains no allegations to the contrary. Plaintiff therefore fails to plead any facts supporting jurisdiction under the longarm statute.

Nor does the Complaint tie any alleged business activities or tortious conduct by Boies to Florida. The Complaint merely alleges that she previously lived at an address in Tallahassee, and that money at some point may have "fell into [her] hands." Compl. ¶¶ 45, 48. Those are vague allegations insufficient to satisfy pleading requirements for personal jurisdiction. *Snow*, 450 F.3d at 1318. Boies confirms she moved fulltime to Illinois in 2019 and never received any money from or talked to McPike. Boies Decl. ¶¶ 7-8.

Likewise, the Complaint ties no alleged business activities of the Illinois-registered Luminescence, LLC to Florida and contains no allegations it ever engaged in tortious conduct in Florida. The Complaint alleges the Illinois-registered Luminescence "used and

12

CASE NO. 9:24-cv-80499-RLR/REINHART

possessed real property in this state" under § 48.193(1)(a)(3). Compl. ¶ 16. But there are no facts, alleged or otherwise, to support that conclusory contention. Nor is there any cause of action purportedly "arising from" any real property in Florida that could satisfy § 48.193(1)(a).

Plaintiffs therefore fail to make the necessary prima facie showing of any enumerated acts in Florida under § 48.193(1)(a) connected to the alleged causes of action. And, even if there were allegations connecting tortious conduct or business activities in Florida to any cause of action in this case (there are not), Defendants' declarations refute any such allegations. *See United Techs.*, 556 F.3d at 1274.

As an alternative, the Complaint contends that Mart and Boies allegedly "engaged in substantial and not isolated activity within this state" under § 48.193(2), Fla. Stat. That subsection subsumes the federal general jurisdiction standard. *United Techs.*, 556 F.3d at 1275 n.16. Under the federal analysis, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U. S. 915, 924 (2011). The Complaint concedes Boies resides in Illinois. The Complaint alleges Mart has an address in Florida, but it is his father's address, and the Complaint is silent as to his citizenship. He is in fact a citizen of California. Mart Decl. ¶ 2. No alleged facts support general jurisdiction over Mart or Boies and, therefore, there is no basis for jurisdiction over them under § 48.193(2).

Accordingly, Plaintiffs have not and cannot meet their burden under the long-arm statute.

**2.  Plaintiffs also fail to satisfy federal due process requirements.**

Under the controlling due process analysis, a Defendant can be subject to personal jurisdiction in this Court only if that Defendant has minimum contacts with Florida such that subjecting the defendant to suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 137-38 (2023). Two types of personal jurisdiction exist: general jurisdiction, and specific "case-linked" jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cali.*, 582 U.S. 255, 262 (2017) (citing *Goodyear*, 564 U. S. at 919). Plaintiffs fail to meet both types of personal jurisdiction.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

Because they are not "at home" in the forum state, general jurisdiction is lacking against Mart and Boies. *See BNSF R. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Goodyear*, 564 U.S. at 919. The same holds true for the non-Florida registered LLCs Luminastra, LLC and the Illinois-registered Luminescence, LLC. A limited liability company defendant is normally subject to general jurisdiction where it is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And all three LLC Defendants are California citizens, as Mart is their sole owner. Luminastra, LLC and the Illinois-registered Luminescence, LLC cannot plausibly be subject to general jurisdiction in Florida. They therefore cannot be subject to general jurisdiction in Florida. *Cf. BNSF*, 137 S. Ct. at 1560 (Sotomayor, J., concurring, dissenting in part) (finding it "virtually inconceivable that corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation.").

Neither the allegations nor facts support specific jurisdiction, either. Specific jurisdiction over a defendant arises when a defendant "purposefully avail[s] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (citation omitted). Specific jurisdiction focuses not on the plaintiff's contacts with the forum state but on the defendant's contacts. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 801 (7th Cir. 2014). A foreign defendant must have either "consented to in-state suits" or must have purposely directed its activity to the forum. *Mallory*, 600 U.S. at 138. The suit must arise out of the defendant's forum-related activity. *Id.*

For all the same reasons Plaintiffs cannot satisfy the long-arm statute, they do not and cannot satisfy specific jurisdiction. No allegations link any conduct by any of the named Defendants to Florida. To the contrary, the allegations reinforce that all the alleged activity took place outside of Florida and, indeed, outside of the United States. The Call Option Agreement was negotiated in the Bahamas and was to be performed in the Bahamas and Nevis. There is no allegation that Mart or Boies were in Florida after September 2019. After execution of the Call Option Agreement, Mart's invoices were neither sent from Florida nor directed any payment to Florida. Mart Decl. ¶ 23. And no money was ever received in Florida. Mart Decl. ¶¶ 24-26. The Florida-registered Luminescence, LLC did no business in

CASE NO. 9:24-cv-80499-RLR/REINHART

any way relative to Mart's projects or the Call Option Agreement with McPike and JTC. Mart Decl. ¶ 13.

For specific jurisdiction, McPike and JTC must have specifically linked <u>each</u> of Defendant's alleged purposeful conduct in Florida with the alleged cause of action. They did not. There is no allegation or evidence that any Defendant purposefully engaged in any conduct in Florida related to this case, or that any of the operative events alleged in this case occurred in Florida. Plaintiffs therefore have not and cannot carry their burden of proving this Court's specific jurisdiction Mart, Boies, the Illinois-registered Luminescence, or Luminastra LLC.

For all these reasons, this Court should dismiss Mart, Boies, and the Illinois-registered Luminescence and Luminastra, LLCs for lack of personal jurisdiction.

C. **The Complaint fails to state a claim for relief.**

1. **The Complaint is a prohibited shotgun pleading that fails to provide required specificity for claims based on alleged fraud.**

On a Rule 12(b)(6) motion to dismiss, the Complaint must satisfy Rule 8's notice pleading requirements, meaning the complaint must contain well-pleaded facts sufficient to make a plausible showing the plaintiff has a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Conclusory allegations, "bare assertions," or "formulaic recitation of the elements" of a claim do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Plaintiffs are to plead with "particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), thus "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (emphasis added and citation omitted); *Mizarro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Plaintiffs are required to set forth "(1) precisely what statements [by Defendants] were made in what documents or oral representations or what omissions were made"; "(2) the time and place of each such statement and the person responsible for making [it]"; "(3) the content of such statements and the manner in which they misled the plaintiff"; and "(4) what [Defendants] obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) (internal quotation marks and

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

citations omitted). Plaintiffs cannot rely on guilt by association or global allegations of misconduct; Rule 9(b)'s strict standard applies to each individual defendant's participation in the fraud. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

Yet, ascribing guilt by association is the Complaint's main strategy. The Complaint is a quintessential "shotgun" pleading. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements. [The Eleventh Circuit has] repeatedly condemned shotgun pleadings." *Yeyille v. Miami Dade Cnty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (citation omitted) There are four basic types: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* (citation omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* They are flatly forbidden because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case . . . can be masked." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (emphasis added and citations omitted).

The Complaint on the one hand purportedly asserts that Mart made misrepresentations about the corporate structure to induce the Call Option Agreement, and later goes on to assert that the entities and Boies, somehow *acting* through Mart, purportedly made the same misrepresentations fails to provide any breakdown of whose conduct in particular is responsible for what acts or when. The Complaint then veers off into confusing allegations about services mainly in Europe that Mart invoiced for and that McPike refused to pay, without explaining what any of that has to do with this case. And the Complaint fails to provide any breakdown of whose conduct in particular is responsible for what acts or when. *Compare generally* Compl. ¶¶ 19-32 (describing purported misrepresentations by Mart) *with* Compl. ¶¶ 51-57 (alleging a dispute over invoices) *with*

16

CASE NO. 9:24-cv-80499-RLR/REINHART

Compl. ¶¶ 67-76 (incorporating by reference paragraphs 1-66 and ascribing misrepresentations to all Defendants with no specificity). The Complaint on its face constitutes categories one, two, and four of forbidden shotgun pleadings.

Further, both counts fail to plead with the required specificity. Count I of the Complaint purports to assert a combined claim for Fraud and Fraudulent Inducement seeking relief against Mart only. The Count claims that "Mart expressly represented to Plaintiffs: (i) the nature and corporate structure of entities purportedly owned directly and indirectly by Luminastra; (ii) the business operations of those entities; and (iii) that Plaintiffs, by providing funding to Luminastra, would acquire specified equity interests in Luminastra and, in so doing, indirect ownership of the subsidiaries." The first alleged false statement lacks any detail on "the time and place of each such statement" and "the manner in which they misled the plaintiff[s]." *Tello*, 494 F.3d at 972. Moreover, the Complaint is confusing and vague stating that "Mart and the other Defendants concealed information by which Plaintiffs might have discerned the true nature of the fraudulent scheme," Compl. ¶ 64, but fails to identify what was concealed by whom and where or when. Fed. R. Civ. P. 9(b) (providing "a party must state with particularity the circumstances constituting fraud or mistake"). The Complaint contains no allegation at all about how Mart or any other Defendant supposedly misrepresented "the business operations" of his entities. The third alleged misrepresentation, that funding would lead to equity interests, is a straight breach of contract allegation, which cannot support a fraud claim. *E.g.*, *Certified Collectibles Grp., LLC v. Globant, LLC*, No. 8:19-cv-1962-SDM-AEP, 2021 U.S. Dist. LEXIS 62554, at *13 (M.D. Fla. Mar. 31, 2021) (rejecting fraud claims where the "alleged fraud is not separate from the performance of the contract").

The Complaint's failure to comply with the Rules and are precisely why this Circuit condemns shotgun pleadings. "The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading.'" *Barmapov*, 986 F.3d at 1324 (citation omitted).

The manner that Plaintiffs were damaged by any misrepresentations is also not sufficiently pled. For example, in vague language, the Complaint asserts that "[b]ased on

17

CASE NO. 9:24-cv-80499-RLR/REINHART

Mart's representations concerning the corporate structure, progress on the business, and its related technology, Plaintiff provided funding according to Mart's direction." Compl. ¶ 28. There is no reference to what particular representations or instructions purportedly caused Plaintiffs to allegedly send monies. There is also no reference to what specific misrepresentations regarding "progress" or "related technology" were made, let alone how often, where, or when. Likewise, the Complaint alleges that "[i]n 2022, Plaintiff's representatives began pressing Mart for information concerning the investment, the status of the entities, and to provide documents evidencing Plaintiff's ownership interest in Luminastra." Compl. ¶ 31. No dates in 2022 are provided. Nor is there any indication as to exactly what was asked about which entities or documents. The Complaint compounds these general statements by next claiming that "[i]n response to these demands, Mart provided what turned out to be incomplete, inaccurate, and false information concerning the entities' structure, finances, and business" and "Mart presented false and contradictory historical financial results which were, upon information and belief, fabricated to conceal the true use of Plaintiffs' funds and the status of the investment." Compl. ¶ 32. There is no reference to when such "information" and "financial results" were provided, let alone what the information and financial results provided were aside from Plaintiffs' contention that it was false.

The Complaint contains no allegations connecting any alleged false statements with the LLC Defendants. And the only theory against Boies is conjecture that money must have fallen into her hands somehow, and that she and Mart should be treated as the same person. Therefore, the conspiracy count also fails for this reason because "[w]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

Accordingly, both counts should be dismissed on the grounds that the Complaint fails to give each Defendant adequate notice of the claims against them and the grounds on which the claim is based. Moreover, the Plaintiffs' continued use of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action or Defendant requires dismissal. Otherwise, Defendants would be required to guess which claims they

18

CASE NO. 9:24-cv-80499-RLR/REINHART

must defend against, and to avoid unnecessary and undue expense on the litigants, this Court, and the Court's personnel and resources.

**2. The conspiracy count is barred by the Intracorporate Conspiracy Doctrine.**

Count Two of the Complaint vaguely purports to allege a conspiracy among Mart, Boies, and all of the entities solely owned by Mart to "to induce Plaintiffs to transfer money purportedly as an investment in Luminastra Ltd., with legitimate business operations and direct and indirect corporate subsidiaries, and to divert those funds to other similarly-named entities owned and controlled by Mart and Boies." Compl. ¶ 68. The intracorporate conspiracy doctrine, however, holds that "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Hollins v. Fulton Cnty.*, No. 10-10954, 2011 WL 1331978, at *4 (11th Cir. Apr. 7, 2011) (quoting *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000)); *see also Robb v. Rahi Rea Est. Holdings LLC*, No. 10-81474-CIV, 2011 WL 2149941, at *4 (S.D. Fla. May 23, 2011) (commenting on intracorporate conspiracy doctrine as additional grounds for dismissal of civil conspiracy claim). The doctrine applies with equal force to wholly owned subsidiaries of parent corporations: because "[a] parent and its wholly owned subsidiary have a complete unity of interest," the idea of a conspiratorial agreement between parent and subsidiary "lacks meaning." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984); *see also In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1350 (S.D. Fla. 2001). Since Plaintiffs' theory is premised on Mart, the alleged control person, conspiring with manager Boies and the entities Mart allegedly controls and managed, the conspiracy claim is barred. Thus, as a matter of law, any purported agreement among the Defendants was not conspiratorial.

**V.   Conclusion**

For all of these reasons, the Court should dismiss this case for lack of personal jurisdiction and forum non conveniens; or alternatively dismiss the Complaint.

Homer Bonner Jacobs Ortiz, P.A.

1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

Dated: May 7, 2024

Respectfully submitted:



Attorneys for Defendants
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:   /s/ Antonio M. Hernandez, Jr.
        Luis Delgado, Esq.
        Email: ldelgado@homerbonner.com
        Florida Bar No. 475343
        Christopher J. King, Esq.
        Email: cking@homerbonner.com
        Florida Bar No.: 123919
        Antonio M. Hernandez Jr., Esq.
        Email: ahernandez@homerbonner.com
        Florida Bar No.: 0117756

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com