# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO. 9:24-cv-80499-RLR

JTC SKYWAVE INVESTMENTS, LTD,
and HARALD McPIKE,

    Plaintiffs,

v.

ANDREW N. MART, DEANNA BOIES,
LUMINESCENCE LLC, LUMINESCENCE
LLC, and LUMINASTRA, LLC,

    Defendants.

_____/

## DECLARATION OF ANDREW N. MART

I, Andrew N. Mart, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over the age of eighteen (18) years, am competent to furnish this declaration, and do so based upon my personal knowledge of the facts and personal involvement in the matters stated herein.

2. I am a fulltime resident of California since August 2023.

3. Prior to moving to California, I had been a fulltime resident of the Bahamas since 2000.

4. I own no property in Florida and have not owned any property in Florida.

5. The address 12081 SW Marigold Avenue, Port St. Lucie, Florida 34987 referenced in the Complaint is my father's address. I do not reside there at the time of the filing of this action or at any point during the relevant time period of this case.

1

CASE NO.: 9:24-cv-80499-RLR

6. I have reviewed the allegations of the Complaint in this action. None of the alleged events referred to in the Complaint occurred in Florida.

7. I have known Harald McPike ("McPike") for over 30 years and have spent much of that time working with and consulting McPike and various entities he owned or controlled. Throughout virtually all of that time McPike resided in the Bahamas. I am unaware of any property or assets McPike or any of his companies owns in Florida. To my knowledge neither McPike nor JTC Skywave Investments, Ltd. has any ties to Florida.

8. My professional relationship with Harald McPike dates back to 1996, when I withdrew from graduate studies at MIT and began working with McPike in the Bahamas. McPike operated a commodities futures trading business in the Bahamas and asked me to develop a risk management software program.

9. I lived and worked fulltime in the Bahamas from 2000 to 2023.

10. After 2010, with McPike's full knowledge and agreement, I began working on my own projects while continuing to advise McPike and develop software.

11. The Complaint references technologies I developed for companies I formed and owned in the decade after 2010. Much of the software and hardware for these projects were conceived, developed, and written entirely by me in the Bahamas, though I took frequent trips to Chicago and Europe to test the software and hardware technology I developed.

12. For each of these projects, I created one or more entities. For example, I registered Luminescence LLC in Illinois to own real estate in Chicago where I could install Network towers, transmitters, antennas, receivers, modems and other telecommunication technology I developed to communicate with devices colocated next to the Chicago

CASE NO.: 9:24-cv-80499-RLR

Mercantile Exchange. I formed Luminastra, LLC in Illinois to own a bank account through which all funding of the operations flowed. Litronika was formed in Lithuania to develop and operate hardware and software I created and wrote; Luxonics developed and operated telecommunications and trading infrastructure in Frankfurt, Germany, including towers, antennas, transmitters, receivers to connect to the Eurex exchange; and QuantumRoot is a company I organized under the laws of Estonia in to develop and operate foreign currency exchange (FX) software and hardware.

13. I separately registered a different Luminescence LLC in Florida, though it did no business in Florida and its only assets were its bank accounts. It held bank accounts outside of Florida and the company held no other assets. None of the payments at issue in the Complaint were ever received by a bank account in Florida. It is the only entity identified in the Complaint with any ties to Florida. The address 5550 Glades Road, Suite 1007, Boca Raton, FL 33431 referenced in the Complaint as the principal place of business for this Luminescence LLC is a virtual office address that forwarded mail to the Bahamas. The principal place of business is 2108 N ST, Suite N, Sacramento, CA 95816.

14. Throughout this period, I was still permanently residing in the Bahamas with my family.

15. By 2019, my companies had been providing services to McPike's companies and invoicing for the work for about 4 or 5 years. McPike, in turn, was helping to fund my projects.

16. In 2019, McPike and I discussed consolidating our resources. The proposed agreement called for McPike continuing to fund my projects in return for the services I provided for McPike's companies, with the ownership entitlement interests increasing

toward 60% as funding levels were reached. The September 2019 Call Option Agreement arose out of those discussions.

17. McPike and I negotiated the agreement in the Bahamas. All negotiations, discussions, and communications I had with McPike relating to the Call Option Agreement occurred in the Bahamas.

18. In September 2019, I created Luminastra Ltd. in Nevis with the expectation that it would act as the entity into which my projects and certain entities operating the projects would be consolidated.

19. Pursuant to Nevis law, Luminastra Ltd. appointed a local Registered Agent, initially AMS Trustees (Nevis) Limited, and later Bolder Corporate Services (Nevis) Limited.

20. As required by Nevis's "Know Your Customer" laws, Luminastra Ltd. provided the necessary due diligence to the Registered Agent and, on September 27, 2019, the Registered Agent issued 1 Class "B" voting share to Iridescence, LLC, a company I owned and controlled.

21. In or around the same time I had a formal written Call Option Agreement drawn up memorializing my agreement with McPike. The parties were Luminastra Ltd., and a British Virgin Islands entity McPike controlled called JTC Skywave Investments, Ltd., for which I then-served as an officer. Only Luminastra Ltd. signed the agreement.

22. The Call Option Agreement gave JTC the right but not the obligation to acquire a maximum 60% nonvoting Common Shares in Luminastra Ltd. upon satisfaction of a funding schedule calling for a series of payments between 2019 and 2022. The agreement provided that the law of Nevis and St. Kitts would govern "all matters arising out of or relating to" the agreement.

23. After September 2019, my companies continued to provide services to McPike's companies and continued to invoice for the work. In 2019, 2020, and 2021, Luminastra, Ltd. delivered invoices to McPike's companies in the Bahamas in amounts corresponding to the funding schedule from the Call Option Agreement. The invoices called for payment to be remitted to Luminastra, LLC at an address in Nevis. True and correct copies of these invoices are attached as Exhibit 1.

24. McPike wired payments from different offshore accounts to a Citibank account owned by Luminastra, LLC.

25. None of the payments at issue in the Complaint were sent by McPike to Florida. That includes the payments alleged in paragraph 45 of the Complaint, where I allegedly "convinced McPike to invest $2 million, for a total of $4 million in 'Luminescence'" in 2018 and 2019, "directing that payments be made to Luminescence LLC, with an address of 2503 Dundee Drive, Tallahassee, Florida." None of the payments were ever received from McPike or any of his companies at that address, or anywhere else in Florida.

26. All of the payments referenced in the Complaint were made to a single bank account owned by Luminastra LLC outside of Florida. Luminastra LLC is not a Florida company and does not conduct any business or own any assets in Florida.

27. Only one payment referenced in the Complaint was made by McPike, which was made in his personal capacity and unrelated to the Call Option Agreement. None of the payments were ever made by JTC.

28. None of the agreements relating to the payments were made in Florida. None of the discussions relating to the business agreements mentioned in the Complaint occurred in Florida.

CASE NO.: 9:24-cv-80499-RLR

29. I told McPike that he would have to provide full due diligence in order for the Registered Agent to issue shares to JTC in accordance with the Call Option Agreement. McPike, a sophisticated businessman who owned shares in multiple companies in the Bahamas and elsewhere in the Caribbean, was well aware of this requirement. But McPike refused to provide the necessary information.

30. As a result, no shares could lawfully be issued to JTC in Nevis, and McPike ultimately rejected JTC's option to acquire shares in Luminastra, Ltd.

31. All of my agreements with McPike were negotiated or performed and ultimately breached by McPike in the Bahamas, where we worked closely together for over three decades and where I conceived and created the software and hardware technologies that allowed McPike to accumulate tremendous wealth; or in Nevis, where the Call Option Agreement was to be performed.

32. The Bahamas are where substantial discovery is located. That includes discovery relating to the Call Option Agreement; the services I performed for McPike and his companies for over three decades, much of which remains unpaid; payment records for those services; and the financials of McPike's companies, which profited and continue to this day to profit tremendously from software and hardware technologies I created, including the very projects and services that are the subject of McPike and JTC's lawsuit.

33. I am aware of the following witnesses who have relevant knowledge about this case and who reside in the Bahamas:

   a. Plaintiff Harald McPike, the central witness in this case;

   b. Corporate representative of JTC Skywave, the other named Plaintiff in this case;

6

    c. Robert Martyn, who worked for McPike as an investment advisor and who ultimately rejected the option on behalf of McPike and JTC Skywave;

    d. Joanne McPike, Harald's ex-wife, who for years paid me to develop software and consult with McPike for his companies;

    e. Lisa Illing, who worked for McPike as an office manager, and made payments from Security Management to me and my companies and witnessed many discussions regarding the business relationships at the heart of this action.

    f. Anthony Jacob Morley, Chief of Staff of QuantRes, who personally in the Bahamas at the McPike office facilitated informing me that I should no longer return to McPike's office and who has other knowledge regarding the relationship between me and McPike;

    g. Walter Ulan, who is familiar with facts regarding the payment referenced in the Complaint from McPike;

    h. Michael Paddon, who works for McPike and has knowledge regarding the relationship between McPike and me;

    i. Dario Higgs, who is a board member of Luminastra, Ltd.

    j. A corporate representative for Market Research, a company in which McPike has a controlling interest which used software I developed and to which I provided consulting services;

    k.  A corporate representative for QuantRes, a company in which McPike has a controlling interest which used software I developed and to which I provided consulting services;

    l.  A corporate representative for the McPike Global Family Office, which McPike created to manage his companies and which employed Robert Martyn and Michael Paddon, among others;

    m.  A corporate representative from Security Management, LLC, an entity controlled by McPike which issued many of the payments on invoices; and

    n.  Other current and former representatives and employees of McPike or his companies, including but not limited to Phillip Boyle, Philipp Bader, Sergii Pypko, Monique Neely, Andi Micic, Rory Kennedy, Nicci Ghotra, Nima Opavar, Jake Ligtenberg, Nathan Sawer, and Marian Szabo.

34. I am aware of the following witnesses who have relevant knowledge about this case and who reside in Nevis:

    a.  Kenley Maynard, who executed certain documents on behalf of AMS Trustees (Nevis) Limited, Luminastra, Ltd's original Registered Agent and is a manager of Sentinel Management, LLC;

    b.  Marsha Fahie, a manager of Sentinel Management, LLC;

    c.  Representative of Bolder Corporate Services (Nevis) Limited, Luminastra, Ltd's Registered Agent at the time McPike and Martyn refused to provide due diligence;

CASE NO.: 9:24-cv-80499-RLR

    d. Representative of AMS Trustees (Nevis) Limited, Luminastra, Ltd's original Registered Agent;

    e. Representative of Sentinel Management, LLC, an entity that manages Iridescence Holdings, LLC.

    f. Representative of Iridescence Holdings, LLC, an entity discussed in the Complaint.

    g. Engelbert van Aalst, a manager of Iridescence Holdings, LLC.

    h. Representative from Nevis Island Administration, Ministry of Finance, who can testify to the due diligence ("Know Your Customer") laws for issuing shares of Nevis entities;

    i. Representative from Island of Nevis Office of The Registrar Of Corporations, which provides corporate documents pertaining to Nevis entities.

    j. Ricaldo V. Caines, the Notary Public involved in the issuance of several of the corporate documents pertaining to Nevis entities.

35. The only arguable witnesses in Florida I am aware of are my attorneys at the Miami office of Greenspoon Marder, who represented me and the other Defendants in Plaintiffs' state court action before removal, and who I previously retained to represent certain of my Nevis companies. Their nonprivileged, relevant knowledge is limited to emails with McPike's representative Bob Martyn in 2022 and January 2023 about the required due diligence, which ultimately led to this litigation.

36. Any alleged damages suffered by McPike would have occurred in the Bahamas, where McPike lives and works.

37. I have no knowledge of any payments at issue in this case coming from JTC.

38. I, for myself and on behalf of Luminescence LLC, Luminescence LLC, and Luminastra, LLC, stipulate and submit to the jurisdiction of the courts of the Bahamas and Nevis/St. Kitts to resolve all disputes arising out the subject matter of this case and will not contest the jurisdiction of those courts over me, Luminescence LLC, Luminescence LLC, or Luminastra, LLC with respect to subject matter of this case.

39. I, for myself and on behalf of Luminescence LLC, Luminescence LLC, and Luminastra, LLC, further consent to service of process in the Bahamas or Nevis/St. Kitts.

40. I, for myself and on behalf of Luminescence LLC, Luminescence LLC, and Luminastra, LLC, further stipulate that I will make relevant witnesses and documents available to a Bahamian or Nevis/St. Kitts court and will respect the final judgment of a Bahamian or Nevis court.

41. I, for myself and on behalf of Luminescence LLC, Luminescence LLC, and Luminastra, LLC, further stipulate that the timely refiling of this case in the Bahamas or Nevis/St. Kitts will relate back to the filing of this action if refiled within 120 days of the dismissal of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2024 in Sacramento, California.

*[signature]*

Andrew N. Mart

# EXHIBIT 1



# Luminastra

## Network Service Invoice

Bill To:

**QUANTRES**

Customer ID:      Q1248
Invoice Number:   Q191212
Invoice Date      2019-09-19
Due Date:         2019-10-19

| Qty | Service Description | | Charging Cycle | Billing Period Start Date | Billing Period End Date | Service Base Rate | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | Service: | #A116109 | Yearly | 2018-09-01 | 2019-09-01 | 3.0 M USD | 3.0 M USD |
|   | Circuit ID: | 10372-HF-AURUSIL-FRADEHE | | | | | |
|   | A: | 2905 Diehl Rd<br>2nd Floor<br>Aurora IL 60502<br>(CME DC3) | | | | | |
|   | Z: | Kruppstrasse 121-127<br>Frankfurt, Hessen<br>60388 Germany<br>(Eurex FR2) | | | | | |

Please Remit Payments To:
Luminastra LLC
P.O. Box 733
Hunkins Water Front Jewels
Charlestown, Nevis 00733

Total Service Charges:           3.0 M    USD
Total Current Charges:           3.0 M    USD
Past Due Balance Upon Receipt    0.0      USD
Prior Balance:                   0.0      USD
**Grand Total (USD)**            **3.0 M  USD**
Due Date                         2019-10-19

Wire / ACH Information:
Bank      Citibank
Account   ▬▬▬▬234
SWIFT     CITIUS33
ABA       271070801

For Billing or Payment Inquiries:
CustomerService@Luminastra.com
+44 20 3239 8172   UTC-4

Please remember to include the Invoice Number with your payment



Luminastra LLC                    Charlestown, Nevis 00733            www.luminastra.com
Hunkins Water Front Jewels        +44 20 3239 8172  UTC-5             CustomerService@Luminastra.com



# Network Service Invoice

Bill To:

**QUANTRES**

Customer ID: Q1248
Invoice Number: Q200612
Invoice Date: 2020-08-15
Due Date: 2020-08-15

| Qty | Service Description | | Charging Cycle | Billing Period Start Date | Billing Period End Date | Service Base Rate | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | Service: | #A116109 | 6 mo | 2019-09-01 | 2020-03-31 | 2.5 M USD | 2.5 M USD |
| | Circuit ID: | 10372-HF-AURUSIL-FRADEHE | | | | | |
| | A: | 2905 Diehl Rd<br>2nd Floor<br>Aurora IL 60502<br>(CME DC3) | | | | | |
| | Z: | Kruppstrasse 121-127<br>Frankfurt, Hessen<br>60388 Germany<br>(Eurex FR2) | | | | | |

Please Remit Payments To:
  Luminastra LLC
  P.O. Box 733
  Hunkins Water Front Jewels
  Charlestown, Nevis 00733

Wire / ACH Information:
  Bank      Citibank
  Account   ████234
  SWIFT     CITIUS33
  ABA       271070801

Total Service Charges:            2.5 M    USD
Total Current Charges:            2.5 M    USD
Past Due Balance Upon Receipt     0.0      USD
Prior Balance:                    0.0      USD
**Grand Total (USD)**             **2.5 M**    **USD**
Due Date                          2020-08-15

For Billing or Payment Inquiries:
CustomerService@Luxonics.com
+44 20 3239 8172   UTC-4

Please remember to include the Invoice Number with your payment

Luminastra        Luxonics GmbH              60308 Frankfurt am Main        USt-Id DE311386220        www.luxonics.com
                  Friedrich-Ebert-Anlage 49  +44 20 3239 8172  UTC-4         HRB 105372                CustomerService@Luxonics.com

 **Luminastra**

# Network Service Invoice

Bill To:

**QUANTRES**

| Customer ID: | Q1248 |
|---|---|
| Invoice Number: | Q200714 |
| Invoice Date | 2021-02-15 |
| Due Date: | 2021-03-15 |

| Qty | Service Description | | Charging Cycle | Billing Period Start Date | Billing Period End Date | Service Base Rate | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | Service: | #A116109 | 6 mo | 2020-04-01 | 2020-09-30 | 541667 USD | 3.25M USD |
|  | Circuit ID: | 10372-HF-AURUSIL-FRADEHE | | | | | |
|  | A: | 2905 Diehl Rd<br>2nd Floor<br>Aurora IL 60502<br>(CME DC3) | | | | | |
|  | Z: | Kruppstrasse 121-127<br>Frankfurt, Hessen<br>60388 Germany<br>(Eurex FR2) | | | | | |

Please Remit Payments To:
  Luminastra LLC
  P.O. Box 733
  Hunkins Water Front Jewels
  Charlestown, Nevis 00733

Wire / ACH Information:
  Bank      Citibank
  Account   ▮▮▮▮234
  SWIFT     CITIUS33
  ABA       271070801

| Total Service Charges: | 3.25 M | USD |
|---|---|---|
| Total Current Charges: | 3.25 M | USD |
| Past Due Balance Upon Receipt | 0.0 | USD |
| Prior Balance: | 0.0 | USD |
| **Grand Total (USD)** | **3.25 M** | **USD** |
| Due Date | 2021-03-15 | |

For Billing or Payment Inquiries:
CustomerService@Luminastra.com
+44 20 3239 8172   UTC-4

Please remember to include the Invoice Number with your payment

Luminastra LLC            Charlestown, Nevis 00733       www.luminastra.com
Hunkins Water Front Jewels   +44 20 3239 8172  UTC-5    CustomerService@Luminastra.com

◆ Luminastra

# Network Service Invoice

Bill To:


QUANTRES

Customer ID:       Q1248
Invoice Number:    Q200715
Invoice Date       2021-09-20
Due Date:          2021-10-20

| Qty | Service Description | | Charging Cycle | Billing Period Start Date | Billing Period End Date | Service Base Rate | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | Service: | #A116109 | 6 mo | 2020-10-01 | 2021-03-30 | 541667 USD | 3.25M USD |
| | Circuit ID: | 10372-HF-AURUSIL-FRADEHE | | | | | |
| | A: | 2905 Diehl Rd<br>2nd Floor<br>Aurora IL 60502<br>(CME DC3) | | | | | |
| | Z: | Kruppstrasse 121-127<br>Frankfurt, Hessen<br>60388 Germany<br>(Eurex FR2) | | | | | |

Please Remit Payments To:
  Luminastra LLC
  P.O. Box 733
  Hunkins Water Front Jewels
  Charlestown, Nevis 00733

Wire / ACH Information:
  Bank      Citibank
  Account   ▇▇▇▇234
  SWIFT     CITIUS33
  ABA       271070801

Total Service Charges:            3.25 M     USD
Total Current Charges:            3.25 M     USD
Past Due Balance Upon Receipt     0.0        USD
Prior Balance:                    0.0        USD
**Grand Total (USD)**             **3.25 M** **USD**
Due Date                          2021-10-20

For Billing or Payment Inquiries:
CustomerService@Luminastra.com
+44 20 3239 8172   UTC-4

Please remember to include the Invoice Number with your payment