# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

JTC SKYWAVE INVESTMENTS LTD,
and HARALD McPIKE,

      Plaintiffs,

CASE   NO.   9:24-cv-

80499-RLR/REINHART

v.

ANDREW N. MART, DEANNA BOIES,
LUMINESCENCE LLC, LUMINESCENCE
LLC, AND LUMINASTRA LLC,

      Defendants.

_____/

## DECLARATION OF DR. PETER D. MAYNARD KC, PhD, FCIARB

I, **DR. PETER D. MAYNARD KC, PhD, FCIARB,** being of legal age and sound mind, pursuant to Fla. Stat. § 92.525, hereby declare as follows:

### A. Qualifications

1. I am a Senior Partner at the law firm of Peter D. Maynard, Counsel and Attorneys, on Bay & Deveaux streets in Nassau, Bahamas. I was called to the Bar of England and Wales and the Bar of the Commonwealth of The Bahamas in 1979 and I am also admitted to practice in a number of jurisdictions throughout the Caribbean including, the Turks and Caicos Islands, Antigua and Barbuda, St. Lucia and Trinidad and Tobago. I have practiced law for approximately forty-five (45) years.

1

2. I frequently advise on cases involving complex civil and commercial litigation, insolvency, alternative dispute resolution, asset tracing and recovery and public interest advocacy.

3. I received my B.A. (Hons) from McGill University, my M.A. and Ph.D. with Distinction in International Law from Johns Hopkins University and my LL.M. from Cambridge University, Jesus College, England. I was formerly the Head of Department for the University of The Bahamas Law Department. I am also a member of the Arbitration Council for the Government of The Bahamas, Co-Chair of The Bahamas Bar Association Arbitration Committee. I am a Fellow of the Chartered Institute of Arbitrators.  I took silk and was appointed King's Counsel in 2023.  A copy of my curriculum Vitae is attached and exhibited hereto as **Exhibit "A."**

4. I have been retained on behalf of Mr. Andrew N. Mart, a Defendant in this matter, as an independent expert to opine on the laws of the Commonwealth of The Bahamas.

## B. The legal system in The Bahamas

5. A brief synopsis of the Bahamian legal system and its laws is useful for providing context to my opinion.

6. The Bahamas was a colony of Great Britain until obtaining independence on 10th July 1973.  It continues to acknowledge the King of England as its constitutional Head of State and maintains its identity as a common law jurisdiction.

7. Pursuant to the passage of the Declaratory Act in 1799 by the Bahamian Parliament, the English Common law and several English Statutes extant at

the time including, for example, the Statute of Frauds and the Habeas Corpus Ac, were adopted and have been added to by local statutes by the Bahamian Parliament over time.

8. Therefore, Bahamian law can be said to be comprised of Bahamian Statutes, enacted by the Bahamian Parliament, many of which in turn are based on English statutes in significant respects, and the common law, which determines statutory interpretation issues and disputed rights and duties arising in law and equity. Bahamian courts rely on English and other common law decisions decisions which are persuasive authority before the Bahamian Courts in the application of the common law.

9. Moreover, Bahamian Courts determine cases by applying the principles of binding precedent, commonly known as '*stare decisis*' and by interpreting and applying relevant statute law.

10. The Supreme Court of The Bahamas (the "**Supreme Court**") is a Court of first instance and exercises civil jurisdiction to hear and determine civil and commercial disputes, such as those arising in the present case between the Plaintiffs and the Defendants.

11. A Supreme Court Judge in The Bahamas is bound to follow relevant precedents of the Court of Appeal of The Bahamas (the "**Court of Appeal**"). Both the Supreme Court and the Court of Appeal are bound by His Majesty's Privy Council, a tribunal of senior English Judges, which sits in London, England.

## C. Background

12. I have reviewed the Plaintiffs' complaint filed in Case No. 502024CA000592XXXAMB Div: AE in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, (the "**Complaint**").

13. Based on that review, it is my understanding that the Plaintiffs are suing the Defendants for an amount to be determined at trial in excess of ten million dollars ($10,000,000.00), plus prejudgment interest, costs and such other relief as the Court deems just, on the basis that the Plaintiffs have suffered loss and damage as a result of (i) a fraud and fraudulent inducement being perpetrated against them by the Defendants[1] and (ii) a civil conspiracy by which the Defendants combined, agreed, and conspired with each other to do an unlawful act or to do a lawful act by unlawful means[2].

14. It is alleged that a call option agreement, dated the 27th September 2019, between a company known as Luminastra Ltd ("**Luminastra**") and one of the Plaintiffs, JTC Skywave Investments Ltd, ("**JTC**") and governed by the laws of St. Kitts and Nevis, (the "**Call Option Agreement**") was instrumental to the Defendants, Andrew N. Mart ("**Mart**")and Deanna Boies ("**Boies**"), fraudulently inducing the Plaintiffs to invest more than ten million dollars ($10,000,000.00) into Luminastra, which was subsequently misappropriated and diverted to other entities in furtherance of the Defendants' conspiracy.[3]

### D. Questions

15. I have been asked to provide answers for the following questions on Bahamian Law:

---

[1] Complaint at paras 60-66
[2] Complaint at paras 67-76
[3] Complaint at paras 41 and 70.

i. The availability and adequacy of the Bahamian courts as a forum to resolve this dispute.

ii. The recognition of common law fraud claims by the Bahamian courts as raised in this dispute.

iii. The interest of Bahamian courts in the resolution of Plaintiffs' claims as the alleged fraudulent acts and injuries occurred in The Bahamas and involve plaintiffs and parties associated with and residing in The Bahamas.

iv. The ability of the Plaintiffs to reinstate the lawsuit in The Bahamas without undue inconvenience or delay.

v. The ability of the Bahamian courts to accept the Defendants' stipulation consenting to service of process in The Bahamas, agreeing to toll any applicable Bahamian statutes of limitation and to respect the final judgment of a Bahamian court.

## E. Assumptions

16. For the purposes of this advice we have assumed without further enquiry:

    i) the authenticity, validity, and completeness of all documents, the genuineness of all signatures on originals or copies, and the conformity with the originals of all documents submitted to us as copies or drafts;

    ii) the accuracy of any and all representations of fact expressed in or implied by the documents we have examined.

## F. Conclusions

17. I have made the following conclusions in respect of the questions in paragraph 15 above:

5

i.    The Bahamian Court is an available and adequate forum for the purposes of resolving this dispute between the Plaintiffs and the Defendants.

ii.   Common law fraud claims such as the fraud and fraudulent inducement claims and the civil conspiracy claim in the Complaint are recognised as causes of action by the Bahamian Court.

iii.  The Bahamian Court, in the interests of justice and in the interests of protecting the rights of the parties, may assert jurisdiction in resolving disputes, such as those in this matter, where the alleged fraudulent acts and injuries occurred in The Bahamas and involve plaintiffs and parties associated with and residing in The Bahamas.

iv.   The Plaintiffs may reinstate the lawsuit in the Bahamas without undue inconvenience or delay.

v.    The Bahamian Courts will accept the Defendants' stipulation consenting to service of process in the Bahamas. On tolling the statute of limitation, this concept is not recognised in The Bahamas. However, it is not necessary in this case as the Plaintiffs causes of action are still within the relevant statute of limitations as indicated in paragraph 24 below. On respecting the final judgment of a Bahamian Court, once the Defendants have submitted to the jurisdiction of the Bahamian Court and if a judgment is obtained against them, it does not matter whether they would have agreed to respect the final judgment of the Bahamian Court, as they would be bound by it regardless.

6

**G. Opinion**

*The availability and adequacy of the Bahamian courts as a forum to resolve this dispute.*

18. The Bahamian Courts are an available and adequate forum to resolve the dispute in this matter.

19. The amount of the claim in the Complaint is in excess of ten million dollars ($10,000,000.00).   The Supreme Court is a court of unlimited original jurisdiction in civil and criminal matters brought before it[4] and can, therefore, hear claims for such an amount.

20. Moreover, the Bahamian Courts would certainly have jurisdiction to entertain and decide the Plaintiffs claims, as set forth in the Complaint, should the Plaintiffs commence litigation in The Bahamas by issuing legal proceedings  in the Supreme Court.   If the Plaintiffs did so, they would be submitting themselves to the jurisdiction of the Supreme Court.

21. Additionally, the causes of action upon which the Complaint are based are (i) fraud/fraudulent inducement and (ii) civil conspiracy, both of which are recognised as civil torts in The Bahamas, i.e. civil wrongs under  Bahamian law, which entitle the Plaintiffs to damages if proved following a trial of the action.[5] Therefore, if the Plaintiffs' claim is successful, an award of damages would be an adequate remedy available under Bahamian law.

---

[4] Section 7 (1) of the Supreme Court Act Chapter 53 of the Statute Laws of the Commonwealth of The Bahamas.
[5] Central Bank of Ecuador et al and Conticorp Sa et al Civil Appeal 92 of 2011

22. Furthermore, under the Bahamian Limitation Act, Chapter 83 of the Statute Laws of The Bahamas, (the "**Limitation Act**") there is generally a six (6) year limitation period within which actions must be brought based on tort[6].

23. In particular, with actions based on fraud, as in the present case, the period of limitation does not begin to run until the Plaintiffs have discovered the fraud or could, with reasonable diligence, have discovered it[7].

24. I note that the Call Option Agreement is dated 27th September 2019. Therefore, using the six (6) year limitation period under the Limitation Act, the limitation period would expire in September 2025, which means the Plaintiffs are still within the limitation period to have their claims litigated in The Bahamas. Alternatively, if this period is calculated from when the Plaintiffs allege that they discovered the fraud, which is sometime between 2022 and 2023, as indicated in paragraphs 31 – 38 of the Complaint, the limitation period would expire sometime between 2028 and 2029.

*Common law fraud claims such as the fraud and fraudulent inducement claims and the civil conspiracy claim are recognised as causes of action by the Bahamian Courts.*

25. As indicated above, it is well established under Bahamian law that common law fraud claims such as the fraud and fraudulent inducement claims and the civil conspiracy claims in the Complaint are recognised in The Bahamas and may be treated as torts, which, if proven, would entitle a Plaintiff to damages.

---

[6] Section 5 (1) (a) of the Limitation Act
[7] Section 41 (1) (a) of the Limitation Act

26. These types of claims are regularly brought before the Bahamian Courts, which have extensive experience in disposing of such claims.

27. In the Court of Appeal decision in Central Bank of Ecuador et al and Conticorp Sa et al Civil Appeal 92 of 2011, which also went to the Privy Council[8], two central causes of action which were adjudicated upon, were fraud and civil conspiracy.

28. On the fraud claim, Justice Anita Allen, then President of the Court of Appeal, noted that "The claim in this action is one of fraud (i) at common law by deceit...The tort of deceit consists in the act of making a willfully false statement with the intent that the Plaintiff shall act in reliance on it and with the result that he does so act and suffers loss and harm as a consequence..."[9]

29. On the conspiracy claim, Justice Allen, noted[10] that:

"*CONSPIRACY*

*LAWFUL MEANS*

*304. I find that on a balance of probability using the Homel standard the defendants are not liable under this head in relation to the GDR transactions. Even if I were to find that they combined with a common intention in accordance with the test in Kuwait Oil Tanker, such combination was with the intention to give effect to the debt/equity plan not to injure IAMF by depriving it of money or the corollary of making money for Conticorp or themselves. On my finding this is not a case within the ratio decidendi of Revenue & Customs Commissioners v. Total Network SL.*

*UNLAWFUL MEANS*

*305. It was argued that liability under this head can arise even though the defendants were not found liable of causing damage by deceit or assisting in a breach of fiduciary duty because it is open to the Court to find that those actions constitute unlawful means and if the parties combined with the intent to cause any of these results they can be guilty of unlawful means of*

---

[8] Central Bank of Ecuador et al and Conticorp Sa et al [2015] UKPC 11
[9] Central Bank of Ecuador et al and Conticorp Sa et al Civil Appeal 92 of 2011 at paras 36 and 83
[10] Ibid paras 304 to 306

*conspiracy. Civil conspiracy differs from criminal conspiracy because unlike the latter the claimant in a civil conspiracy must prove the overt act.*

*306. Central to this is the intention of the defendants. Of the numerous examples provided by the authorities cited above Lord Nicholls, in my view, came nearest to expressing the applicable test in a case such as this in his example at paragraph 167 of OBG Ltd. v. Allan (supra) as follows:*

*'In other words, a case where loss to the claimant is the obverse side of the coin from gain to the defendant. The defendant's gain and the claimant's loss are, to the defendant's knowledge, inseparably linked. The defendant cannot obtain the one without bringing about the other. If the defendant goes ahead in such a case in order to obtain the gain he seeks, his state of mind will satisfy the mental ingredient of the unlawful interference tort.'"*

Accordingly, this decision clearly indicates that the Bahamian Courts have the aptitude to deal with the causes of action raised in the Complaint.

***The interest of Bahamian Courts in resolution of Plaintiffs' claims as the alleged fraudulent acts and injuries occurred in The Bahamas and involve plaintiffs and parties associated with and residing in The Bahamas.***

30. The Bahamian Courts in the interests of justice and in the interests of protecting the rights of the parties will likely assert jurisdiction in resolving the disputes in the present case, as the alleged fraudulent acts and injuries occurred in The Bahamas and involve plaintiffs and parties associated with and residing in The Bahamas.

31. Notwithstanding that there is a governing law clause which stipulates that the Call Option Agreement will be governed by the laws of St Kitts and Nevis[11],

---

[11] Clause 5.2 of the Call Option Agreement at Exhibit C of the Notice of Removal Entered on FLSD Docket 04/22/2024

that clause is not determinative of the issue as it does not specify a forum for the resolution of disputes in this matter.

32. In such circumstances, the question of what is the appropriate forum for resolving the dispute is determined by the tests set out in the English House of Lords case of **Spiliada Maritime Corporation v Cansulex Ltd [1987] AC 460.**

33. In **Spiliada Maritime Corporation v Cansulex**, the applicable tests for determining the appropriate forum were whether:

 (i) is there another forum in which the case may be tried more suitable for the interest of the parties and the ends of justice; and

 (ii) if there is an available forum which is prima facie the appropriate forum, then the party seeking not to have the case tried in the prima facie appropriate forum will have to show special circumstances why it should not be tried in the prima facie appropriate forum[12].

34. A finding that the Bahamian Court and not the Floridian Court is the proper forum for resolving disputes in this matter, is made on the ground of *forum non conveniens*, i.e. that there is some other available forum of competent jurisdiction, which is distinctly more appropriate for the trial of the action in which the action has the most real and substantial connection.

35. Relevant connecting factors that the Bahamian Court often considers include the convenience and expense of witnesses, the place where the parties reside and carry on their business and even the peculiar nature of the dispute. Additional factors may include the  inconvenient nature of the parties' need to

---

[12] Spiliada Maritime Corporation v Cansulex Ltd [1987] AC 460 Per Lord Goff at page 476.

continually stop and obtain expert evidence on points of disputes and the impact that this requirement will inevitably have on the proceedings, including increasing the costs associated with the disputes.

36. In the present case, if we were to apply the tests laid down in **Spiliada Maritime Corporation v Cansulex** The Bahamian Court is a more appropriate forum than the Florida Court for a number of reasons including:

    i.    at all material times, Mart and the Plaintiff Harald McPike, ("**McPike**") the alleged ultimate owner of JTC resided in The Bahamas[13].

    ii.    The Call Option Agreement, which is the basis of the Plaintiffs' claims arose out of technologies Mart wrote and developed himself in The Bahamas[14].

    iii.    McPike and Mart negotiated the Call Option Agreement in The Bahamas and all discussions and communications relating to the Call Option Agreement occurred in The Bahamas[15].

    iv.    In 2019, 2020, and 2021, Luminastra delivered invoices to McPike's companies in The Bahamas, in amounts corresponding to the funding schedule from the Call Option Agreement[16].

    v.    All of Mart's agreements which he negotiated and performed with McPike, such as the Call Option Agreement, were negotiated, performed and ultimately breached in The Bahamas where both Mart and McPike worked closely together for over 30 years[17].

---

[13] Declaration of Andrew N .Mart paras 3 and 7
[14] Ibid para 11
[15] Ibid para 17
[16] Ibid para 23
[17] Ibid para 31

vi.    Substantial discovery relating to this dispute, including discovery relating to the Call Option Agreement, the services performed by Mart for McPike, and payment records relating to services, the subject of this dispute, are located in The Bahamas[18].

vii.   Numerous witnesses who have relevant knowledge about this case reside in The Bahamas[19].

viii.  The Bahamas, as a common law jurisdiction, similar to St. Kitts and Nevis, would be better placed to obtain and apply expert evidence from St. Kitts and Nevis as necessary, given that both jurisdictions share a similar jurisprudential history and have the Privy Council as their final court of appeal.

Considering these factors, I believe the Bahamian Court is a more appropriate forum that the Florida Court for resolving this dispute and would assert its jurisdiction to determine this matter in the interests of the parties and attaining the ends of justice.

**The Plaintiffs may reinstate the lawsuit in the Bahamas without undue inconvenience or delay**

37. I believe that the Plaintiffs may reinstate the lawsuit in The Bahamas without undue inconvenience as McPike is a long term resident of The Bahamas with substantial financial resources[20].

38. Further, the Plaintiffs can simply re-issue proceedings for fraud/fraudulent inducement and civil conspiracy in the Bahamian Court.  Similar pleadings and

---

[18] Ibid para 32
[19] Ibid para 33
[20] Motion to Dismiss dated 7th May 2024 para 3

causes of actions to those issued in the Florida Court can be issued in The Bahamas.

39. Moreover, there is unlikely to be any delay because the reinstatement of the lawsuit will not be opposed by the Defendants.

40. In this regard, Mart, in his Declaration, dated 7th May 2024[21], has, for himself, and on behalf of Luminescence LLC, Luminescence LLC, and Luminastra, LLC:

    a. agreed and submitted to the jurisdiction of the Bahamian Court to resolve all disputes arising out of the case;

    b. agreed not to contest the jurisdiction of the Bahamian Court over them;

    c. agreed to service of process in The Bahamas;

    d. agreed to make relevant witnesses and documents available to a Bahamian Court and to respect the final judgment of a Bahamian Court; and

    e. agreed that the timely refiling of the case in The Bahamas will relate back to the filing of the action in the Florida Court , although this is was not necessary as the Plaintiffs' causes of action are still within the relevant limitation period as indicated in paragraph 24 above.

41. Furthermore, Boies in her Declaration, dated 7th May 2024, has given identical undertakings, to those stated above[22] .

42. For these reasons, it is very likely that the Plaintiffs can reinstate the lawsuit in The Bahamas without undue inconvenience or delay.

---

[21] Declaration of Andrew N. Mart paras 38-41
[22] Declaration of Deanna Boies paras 9-12

*The Bahamian courts may accept the Defendants' stipulation consenting to service of process in the Bahamas, agreeing to toll any applicable Bahamian statutes of limitation and to respect the final judgment of a Bahamian Court.*

43. The Bahamian Courts would accept the Defendants' agreement to accept service in The Bahamas, as they have given those undertakings in their Declarations in a court of competent jurisdiction and under the penalty of perjury. Therefore, if the Plaintiffs reinstate their lawsuit in The Bahamas in reliance on the Defendants' representations that they would accept service in The Bahamas, the Defendants would not be subsequently permitted to refuse to accept service.

44. The concept of tolling a statute of limitation is not recognised in The Bahamas. However, it would not be  not necessary in this case as the Plaintiffs causes of action are still within the relevant statute of limitations as indicated in paragraph 24 above.

45. Finally, the Defendants undertaking to respect the final judgment of the Bahamian Court, coupled with their undertaking to submit to the jurisdiction of the Bahamian Court would prevent them from challenging the jurisdiction of the Bahamian Court once proceedings have been commenced.  In addition, once the Defendants have submitted to the jurisdiction of the Bahamian Court and if a judgment is obtained against them, it does not matter whether they would have agreed to respect the final judgment of the Bahamian Court, as they would be bound by it regardless.

I declare, pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10th May 2024

Peter D. Maynard

16

17

Exhibit "A."

Bay & Deveaux Streets, P.O. Box N-1000 Nassau, N.P., The Bahamas Telephone: (242) 325-5335
Fax: (242) 325-5411 Website: www.maynardlaw.com E-mail: peter.maynard@maynardlaw.com



# PETER D. MAYNARD KC, PhD, FCIArb

**Experience**

- Senior Partner of *Peter D. Maynard, Counsel and Attorneys,* Bay & Deveaux Sts., Nassau, Bahamas, dealing with civil litigation, insolvency, appropriate dispute resolution, public interest advocacy, asset tracing and recovery on behalf of victims of fraud. 24 years of successful leadership roles in national, regional and international lawyer institutions.

- Engaged in helping to guide the IBA to becoming a well-financed organization as a former Assistant Treasurer of the International Bar Association (IBA), Secretary-Treasurer, Professional & Public Interest Division (PPID), Secretary – Treasurer, HRI Council and IBA Management Board Member.

- President, Commonwealth Lawyers Association, 2023 – 2024

- Kings Counsel 2023

- Fellow of the Chartered Institute of Arbitrators 2016

- Chair, Professional & Public Interest Division of the IBA, 2011 – 2012

- Member of the Human Rights Institute (HRI) Council, 2011 - 2012

- Former Justice (Ag) of the Supreme Court of The Bahamas, 1st January - 31st October 2007

- Chair, IBA Pro Bono and Access to Justice Committee, c 2005 – 2006

- President of the Organization of Commonwealth Caribbean Bar Associations (OCCBA), reviving and transforming OCCBA as a proactive federation of 15 Bars, 1998 – 2003

- President of the Bahamas Bar Association (BBA), 1997 – 2003

1

- Author of the successful bid by the Bahamas to host the CLC Nassau, 2021

- CLA Vice President for the Americas Hub

- Chair, Host Committee, Annual Conference of the Inter American Bar Association (IABA), Nassau, Bahamas, June 2009

- Author of the IBA International Pro Bono Declaration, adopted unanimously by the IBA Council, Buenos Aires 2009 - https://www.ibanet.org/document?id=C4B06FD6-A807-44D4-A98A-C73B464589C6

- Representation of John Ray III, CEO and Chief Restructuring Officer of FTX Group of companies to take in assets on behalf of the victims of the FTX collapse 2022

- Representative for the past four decades of abandoned seafarers. The Norwegian Seafarers Union and the International Transport Workers' Federation (ITF) including many major maritime cases such as the resent bankruptcy of the Crystal Cruises cruise ships affecting 1,682 seafarers

- Trainer on Ethics, Bar office management, and accreditation for the East Timor Bar Association, Dili, East Timor, February, 2006

- Practical experience and standard setting as the International observer at the momentous Prasad constitutional appeal to challenge the military-installed civilian government in Fiji and to restore the constitution, Suva, Fiji 19th - 23rd February, 2001. In spite of my objective, in-person report which found the Court of Appeal trial to be fair, I was declared persona non grata in Fiji by the military government since 2006. Click to view the trial observation report. I wear this status as a badge of honour.

- Member of FraudNet, Asset Tracing and Recovery Lawyers under the auspices of the International Chamber of Commerce acting for victims of fraud - https://www.icc-ccs.org/home/fraudnet

- Member of Advisory Committee of the International Legal Resource Center of the American Bar Association and UNDP

- Founding Director and Member of the International Legal Assistance Consortium (ILAC), Stockholm, Sweden restoring rule of law in global post-conflict situations

- Member of the ILAC group of experts that visited Haiti and conducted an assessment of the reform of its judicial system, 2005

- National President for the Bahamas of the World Jurist Association, 1999 - present

- Guest Scholar, Brookings Institution, a well-known think tank in Washington, D.C.

- Stipendiary and Circuit Magistrate (Ag), c.1990-95

- Trustee on the inaugural Board of Trustees of the Caribbean Court of Justice Trust Fund, 2003

- Member and Deputy Chair of the Regional Judicial and Legal Service Commission for the Caribbean, 2013-19

- Official visits to the Bar Associations of Madrid, Paris, Vienna, the All-China Lawyers Association, and the Bar Council and Law Society of England and Wales in c.1998, Helsinki, Amsterdam, Beirut, Amman, and Dubai c. 2011, Pan African Lawyers' Union. Addis Ababa, Kigali, Arusha 2022, among visits to many other bars and law societies.

Formerly:

- Economist, Financial Resources Development Branch, Center for Development Planning, Projections and Policies, Economic and Social Council (later the Center on Transnational Corporations), United Nations, New York, 1974;

- Legal Adviser, Bahamas Ministry of Foreign Affairs, 1984-88; Counsellor, Permanent Mission of The Bahamas to the United Nations, New York, 1980-83; Diplomat and Head of Delegation for the Bahamas at numerous international conferences; Vice Chairman of the Legal (or 6th) Committee of the United Nations General Assembly (UNGA), New York, c.1982; Member of various other UNGA projects and Committees, notably the Economic and Social (or 3rd) Committee; Occasional attendance at the U.N. Security Council; Chairman, U.N. Working Group on the Review of the Multilateral Treaty-Making Process, New York; Member, Bahamas Trade Commission; Member, Bahamas Legal Aid Commission.

- Newspaper Columnist for 20 years on human rights, rule of law, ant-corruption, and international affairs; former Contributing Editor of the Company Lawyer; Advisory Board Member of and Contributor to the Journal of Money Laundering Control; and Contributor to the Journal of International Financial Crime; International Affairs Editor

- Author of more than a hundred professional articles on corporate law, asset tracing and recovery, trusts, financial services, banking, anti-money laundering, government procurement, insurance, civil liberties, anti-corruption, trade and investment policy and other subjects

- Head of the Law Department, University of the Bahamas, c. 2014 - 2021

- Multi-lingual, especially in French, Spanish, but some familiarity with several other languages such as Italian, German, Russian, Portuguese, Arabic and Mandarin

**Education**
- B.A. (Hons) (McGill)
- M.A., Ph.D. with Distinction in International Law (Johns Hopkins)
- LL.M. (Cambridge University, Jesus College)
- Barrister (Bahamas, England and Wales, Trinidad and Tobago, St. Vincent and the Grenadines, St. Lucia, Antigua-Barbuda, and pro hac vice Turks and Caicos Islands)
- Also attended the Sorbonne, Paris, France; Cornell University, Ithaca, New York; University of Toronto, Ontario; Council of Legal Education and Gray's Inn, London
- Numerous distinctions, awards and scholarships, such as the Bahamas National Scholarship, the Commonwealth Scholarship, the Organization of Commonwealth Caribbean Bar Associations lawyer of distinction award 2020, and the University of the Bahamas Faculty, Teaching Excellence Award 2022

3

**Selected Publications**

- The Commission and Centre on Transnational Corporations 1 *Company Lawyer* 226 1980

- Harmonization of Companies Laws in the Caribbean *Journal of Business Law* 421-5 1982

- The Legal Competence of the United Nations High Commissioner for Refugees 31 *International and Comparative Law Quarterly* 415 1982

- Towards A Code of Conduct for Transnational Corporations 4 *Company Lawyer* 259 1983

- Offshore Banking and Tax Havens with special emphasis on the Caribbean, Commonwealth Workshop on Economic Crime, Barbados September 17, 1986.

- "13 Years of Independence" 22 July/October 1986

- "Foreign Service" 36 March/April 1987

- Multinational Insurance Companies in The Bahamas: Their Structure and Economic Impact 9 *Company Lawyer* 32-33 1988

- "George Bush Presidency" 153 January/February 1989

- "*Bank of The Bahamas-One Year Later*" 163 November/December 1989

- International Business Companies, The Bahamas in International Affairs, Nassau Guardian Monday, September 25, 1989

- The Bahamas as an International Offshore Financial Centre, address to the Bahamas Media Club, October 2, 1989

- The United Nations, Statement to the Nassau Chapter of Links, Incorporated on the occasion of United Nations Day, Lowe's Harbor Cove, October 23, 1989.

- Attracting new investors, The Bahamas in International Affairs, Nassau Guardian Monday, November 19, 1990

- The Responsibility of the Press in a Democratic Society: Media Regulation and Social Values 28 February, 1991

- International Business Company: An Overview 19 *International Business Lawyer* 433-434 1991, IBA

- Bahamas International Business Companies Act, 1989" 3 *Caribbean Law and Business* 43 1991

- "Nassau Modern Metropolis" March 1991,

- "The Gulf War" April 1991

- "The Bahamas-Turks & Caicos Connection" May 1991,

- "OAS Nassau Summit" 10 July 1991

- "The World of Offshore Banking" 30 July/August 1991

- "The Enterprise of the Americas Initiative" November/December 1991

- "The Bahamian Economy in 1991"  1991

- "The Bahamian Economy"  January/February 1992

- "The Nassau Summit of Commonwealth Leaders" 1992

- "The Bahamas in the Inter-American System" 7 February 1992

- Bahamas- Asset Protection Trust 23 *Inter-American Law Review* 837 1992

- Offshore Banking in the Caribbean, with special reference to the Bahamas, based on the address at the Tenth International Symposium on Economic Crime at Jesus College, Cambridge University, England on 15 July, 1992.

- The Bahamas Companies Bill, 1991 4 *Caribbean Law and Business* 38 1992

- Insurance Law Reform in the Commonwealth Caribbean: CLI's Draft Legislation. An Overview and Critique, 4 *Caribbean Law and Business* 66 1993

- A New Legislative Framework for Insurance in the Caribbean 8 *Journal of the Society of Fellows* 1 Chartered Insurance Institute 1993

- Bahamas- Fraudulent Dispositions Act 4 *Caribbean Law and Business* 47 1993

- Doing Business in The Bahamas adapted from speech given at Commercial Law Reform in the Commonwealth at the Intercontinental Hotel, Miami on Thursday, December 15, 1994.

- Insurance Law Reform: An Introduction to the CLI Insurance Bill speech at the Caribbean Law Institute Workshop on Insurance Law, Nassau Marriott, May 3rd, 1995.

- Overseas Editor -Journal of Financial Crime, the official Journal of the Cambridge International Symposium on Economic Crime. Vol 3, No2 October 1995

- Anti Corruption Laws: Is There a Model? Based on the address at the Fourteenth International Symposium on Economic Crime, Cambridge, England, 11 September, 1996.

- Civil Liberties and Privacy - The Question of Balance, based on the address at the Cambridge International Symposium on Economic Crime, Cambridge, England, 13 September, 1996.

- Universality and the United Nations *International Law as a Language for International Relations* (The Hague: Kluwer for the United Nations, 1996) 425

- Case Law on Corruption and Bribery in the Bahamas 4 *Journal of Financial Crime* 285 1997
- Bahamas: Civil Liberties and Privacy, The Question of Balance *Journal of Money Laundering Control 177 1997*

- Anti-Corruption Laws: Is There a Model? *Journal of Financial Crime* 275 1998

- Offshore Banking Secrecy: Myth or Realty? 4 Journal of Money Laundering Control 316 1998

- Doing Business in the Bahamas: What the Investor (and His Lawyer) Need to Know, 1998

- The Emerging Caribbean Anti-Money Laundering Regime with Special Reference to the Bahamas, 1999

- Banking Regulation in the Bahamas, Journal of Banking Regulation 1999

- Seven Sins: or How Should a Lawyer Conduct Him or Herself? 1 The Eugene Dupuch Law School Student's Association Newsletter 10, 1999

- "Doing Business in The Bahamas in The New Millennium" Brief Monthly, February 1999

- "The Bahamas' New Financial Transactions Reporting System" 25 West Indian Law Journal 93 2000

- Trusts in the Bahamas: Ready for the New Millennium, 2000

- Public Procurement in the Bahamas, 2000

- Shaming International Financial Centres 8 Journal of Financial Crime 145 2000

- "Trusts In The Bahamas" Trusts in Prime Jurisdictions 187-296, 2000-2001

- Money Laundering and Harmful Tax Competition, Florida Journal of International Law, 2001

- The Grupo Torras Saga, 2001

- Putting International Financial Centres out of Business: the Rush to Judgment and the Rush to Capitulation, Journal of Financial Crime, 2001

- "Executive Agencies may not Violate an Investor's Human Rights: A Case Starts the March to Restoring the Competitive Advantage of International Financial Centres, Journal of Financial Crime, 2001

- "Trial Observation in Fiji Constitutional Case" 26 International Legal Practitioner June 2001

6

- "Assisting the Organisation of Commonwealth Bar Association"- International Bar News, Vol pg 36 2002

- "Commonwealth of The Bahamas" Internationales Immobilienhandbuch 87-108, July 2003

- Excerpts of essay Commonwealth Scholarship Commission in the United Kingdom, 48th Annual Report to the Secretary of the State for International Development pg 14

- "Country-Specific Possibilities for Asset Tracing & Recovering (Bahamas)," Part II pgs.289 299 of Asset Tracing & Recovery: FraudNet Compendium, edited by Bernd H. Klose, 2009

- "Social Justice" a business lawyer's perspective 2012

- "The Erosion of Confidentiality in Offshore Financial Centres", Risky Business; Perspectives on Corporate Misconduct, 2010.

- "The Bahamas" Bloomsbury Professional Ltd., International Guide to Money Laundering Law and Practice, 3rd edition, 2010 p. 351-390.

- "The Bahamas" International Public Procurement, Center for International Legal Studies 2011.

- "Powers of Attorney" April 2011

- Presentation on Law Firm Management, IBA African Regional Forum, Kampala, Uganda at the African Regional Forum, August 2012

- "FATCA: Practical Implications for retail banking", February 2013
- "Arbitraje y El Caribe" (Arbitration in The Caribbean) a presentation prepared for annual conference of the Inter American Bar Association (IABA), Paraguay, June 2013

- "Atlantic Tigers: Arbitration in The Caribbean" Caribbean Commercial Law Workshop, Miami Beach, August 2013

- "Launch of the Caribbean Law Initiative" Uniform Law Commission, St. Thomas, US Virgin Islands 2013

- "Constitutional Commission Recommendations: Citizenship, Death penalty, Trial by jury, Privy Council, Fundamental human rights, and Environmental human rights" October 2013

- "Judicial Secrecy and Suspension of Adversarial Proceedings: Sealing and Gagging Relief" Presentation to ICC Fraudnet, Third Annual Conference on Fraud, Asset Recovery & Cross Border Insolvency Cooperation, Sao Paulo, Brazil, November 7th, and 8th, 2013

- "Rule of Law" keynote speech at the Law Society of Zimbabwe Walter Kamba Annual Rule of Law Dinner, Harare, Zimbabwe 5th December 2013

- "10 Arbitration Resolutions for the New Year", 2015

- International and Regional Commercial Arbitration Hubs: Atlantic Tigers or Caribbean Basin Pussycats? Caribbean Law Review (2014) Carib. L.R. (36-52)

- Tribute to Dr. Lloyd Barnett JAMBAR Journal No.29 Vol. 3 & 4 September & December 2016

- Moderator of the session "Maritime and Cruise ship Arbitration; Charting the Course and Setting Sail" Arbitration and Investment Summit, Nassau Bahamas, January 2017

- Moderator of the session "Smooth or Rough Seas: Challenges to Maritime Arbitration" Arbitration and Investment Summit, Nassau Bahamas, January 2018

- Wrote the Foreword, assisted and guided author Dr. Aretha Campbell with her book "Money Laundering, Terrorist Financing, and Tax Evasion: The Consequences of International Policy Initiatives on Financial Centres in the Caribbean Region", 2021

- Authored a course proposal and outline on Anti-Corruption, 2022

- Course proposal and outline for Maritime Law, 2022

- "Poverty Justice and The Rule of Law" book co-edited by Peter Maynard and Neil Gold, London IBA, 2013, precursor to Eradicating Poverty through Social Development: A Practical Guide for Lawyers 2021

**Selected Civic Activities**

- Founder of S.T.R.O.K.E (Support through Treatment, Rehabilitation, Opportunity, Care and Encouragement) for stroke survivors and their care givers
- Revitalization of the National Festival of the Arts Community (NFAC) umbrella organization of the arts and crafts in the Bahamas
- Founder and chair of the International and Western Hemisphere Arbitration, Adjudication and Mediation Centre (IWHAAM), a non-profit company dedicated to promotion of ADR and the operation of an ADR centre.

**Sports Interests**

- Table tennis, yoga, football, track and field.

8