UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:24-cv-80499-RLR

JTC SKYWAVE INVESTMENTS LTD.,
and HARALD McPIKE

      Plaintiffs,

v.

ANDREW N. MART, DEANNA BOIES,
LUMINESCENCE LLC, LUMINESCENCE
LLC, and LUMINASTRA LLC,

      Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR FORUM NON CONVENIENS AND LACK OF
PERSONAL JURISDICTION AND, ALTERNATIVELY, FOR
FAILURE TO STATE A CLAIM FOR RELIEF**

TABLE OF CONTENTS

Table of Authorities .......................................................................................................... iii

Preliminary Statement ......................................................................................................... 1

Argument ............................................................................................................................. 2

    I.    *Forum Non Conveniens.* ....................................................................................... 2

        A.    Applicable Law. ..................................................................................... 2

        B.    Deference to Plaintiffs' Choice of Forum. ............................................. 3

        C.    Application of the Private and Public Factors. ....................................... 3

    II.    Personal Jurisdiction. ........................................................................................ 11

        A.    Applicable Law. ................................................................................... 11

        B.    The Defendants Are Subject to Personal Jurisdiction in Florida. ................................................................................................. 11

        C.    In the Alternative, Plaintiffs Request that the Court Withhold Ruling on the Motion to Dismiss Pending Jurisdictional Discovery. ...................................................................... 16

    III.    The Court Should Deny Defendants' Motion to Dismiss Failure to State a Claim. ............................................................................................................... 17

        A.    Applicable Law ..................................................................................... 17

        B.    The Complaint is Not a "Shotgun Pleading." ..................................... 17

        C.    Plaintiffs Sufficiently Allege the Role of Each Defendant. ................. 18

        D.    Plaintiffs' Fraud Claim is Plead with Requisite Particularity .............. 19

        E.    Plaintiffs' Conspiracy Claim is Plead with Requisite Particularity ........................................................................................... 19

        F.    Plaintiffs' Conspiracy Claim is Not Barred by the Intracorporate Conspiracy Doctrine. ................................................. 20

        G.    In the Alternative, Plaintiffs Seek Leave to Replead ........................... 20

Conclusion .......................................................................................................................... 20

## Table of Authorities

**CASES**

*Am. Dredging Co. v. Miller*
510 U.S. 443, 447-448 (1994) ............................................................ 2, 4, 5, 10

*Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*
77 F.3d 364, 366 ............................................................................... 17

*Asahi Metal Indus. Co. v. Superior Court*
480 U.S. 102 (1987) ........................................................................... 11

*Baris v. Exhibits One, Inc.*
No. 17-cv-62429-BLOOM/Valle, 2018 U.S. Dist. LEXIS 248876, at *2 n.1 (S.D. Fla.
Apr. 20, 2018) .................................................................................. 14

*Bristol-Myers Squibb Co. v. Superior Court*
582 U.S. 255, 262, (2017) ................................................................... 11

*Burger v. Hartley*
896 F. Supp. 2d 1157, 1164-65 (S.D. Fla. 2012) ........................................ 13

*Butler v. Yusem*
44 So. 3d 102, 105 (Fla. 2010) ............................................................. 4

*Daimler AG v. Bauman*
571 U.S. 117, 137 (2014) .................................................................... 15

*Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*
955 F.2d 368, 375 (5th Cir. 1992) ......................................................... 9

*Ferenchak v. Zormati*
572 F. Supp. 3d 1284, 1294 n.5 (S.D. Fla. 2021) ...................................... 12

*Ford v. Brown*
319 F.3d 1302, 1308 (11th Cir. 2003) .................................................... 3, 4

*Fresh Results, Ltd. Liab. Co. v. ASF Holland, B.V.*
921 F.3d 1043, 1048-49 (11th Cir. 2019) ................................................ 2, 9

*Fruitstone v. Spartan Race Inc.*
464 F. Supp. 3d 1268, 1283 (S.D. Fla. 2020) ........................................... 5

*Glob. Med. Sols. v. Simon*
No. CV 12-04686 MMM (FMOx), 2013 U.S. Dist. LEXIS 207019, at *33 (C.D. Cal. Jan.
10, 2013) ........................................................................................ 9

*Glob. Quest, LLC v. Horizon Yachts, Inc.*
849 F.3d 1022, 1029-30 (11th Cir. 2017) ................................................ 4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
564 U.S. 915, 924 (2011) .................................................................... 11

*Gulf Oil*
 330 U.S. at 509.................................................................................................................. 9

*In re Bal Harbour Quarzo, LLC*
 634 B.R. 827, 833 (Bankr. S.D. Fla. 2021)..................................................................... 12

*In re W. Caribbean Crew Members*
 632 F. Supp. 2d 1193, 1201 (S.D. Fla. 2009) ........................................................... 3, 10

*Intl. Shoe Co. v. Washington*
 326 U.S. 310, 316 (1945)................................................................................................ 11

*Lacey v. Cessna Aircraft Co.*
 862 F.2d 38, 45-46 (3d Cir. 1988) .................................................................................. 3

*Leon v. Millon Air, Inc.*
 251 F.3d 1305, 1311 (11th Cir. 2001) ............................................................................. 2

*Meier v. Sun Int'l Hotels, Ltd.*
 288 F.3d 1264, 1269 (11th Cir. 2002) ...................................................................... 11, 12

*NHB Advisors, Inc. v. Czyzyk*
 95 So. 3d 444, 448 (Fla. 4th DCA 2012) ................................................................. 13, 16

*Otto Candies, LLC v. Citigroup, Inc.*
 963 F.3d 1331, 1343 (11th Cir. 2020) .................................................................. 1, 3, 7, 9

*Pearson v. Deutsche Bank AG*
 No. 21-cv-22437, 2022 U.S. Dist. LEXIS 57846, at *13-14 (S.D. Fla. Mar. 29, 2022) .. 19

*Peoples Home Health v. Case N Covenant Home Health Care*
 No. 3:20-cv-5523-MCR-HTC, 2020 U.S. Dist. LEXIS 259828, at *6, 2020 WL
 12309341, (N.D. Fla. Oct. 15, 2020) ............................................................................. 18

*Piper Aircraft Co. v. Reyno*
 454 U.S. 235, 261 (1981)............................................................................................. 3, 9

*Polywad, Inc. v. Able's Sporting, Inc.*
 No. 5:23-cv-00512-TES, 2024 U.S. Dist. LEXIS 74059, at *12 n.5, 2024 WL 1744068
 (M.D. Ga. Apr. 23, 2024)............................................................................................... 16

*Posner v. Essex Ins. Co.*
 178 F.3d 1209, 1215 (11th Cir. 1999) ........................................................................... 12

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*
 711 F.2d 989, 995 (11th Cir. 1983) ............................................................................... 17

*Raimbeault v. Accurate Mach. & Tool*
 No. 14-CIV-20136-BLOOM/Valle, 2014 U.S. Dist. LEXIS 140313, at *37 (S.D. Fla.
 Sep. 30, 2014) ............................................................................................................... 20

*Rd. Space Media, LLC v. Miami-Dade Cty.*
 Civil Action No. 19-21971-Civ-Scola, 2020 U.S. Dist. LEXIS 99657, at *4 (S.D. Fla.
 Apr. 23, 2020) ............................................................................................................... 16

*Reed v. Royal Caribbean Cruises, Ltd.*

No. 20-cv-24979-RAR, 2021 U.S. Dist. LEXIS 180657, at *31, 2021 WL 4307048 (S.D. Fla. Sep. 22, 2021) ........................................................................................................... 9

*Regions Bank v. Caplan*
2014 WL 5088889, *6 (M.D. Fl. 2015) ...................................................................... 20

*Results v. ASF Holland, B.V.*
No. 17-cv-60949-BLOOM/Valle, 2019 U.S. Dist. LEXIS 160791, at *14 (S.D. Fla. Sept. 20, 2019) .................................................................................................................... 9

*Ritter v. Metropolitan Cas. Ins. Co.*
No. 4:19-CV-10105-KMM, 2019 U.S. Dist. LEXIS 227839, 2019 WL 8014511, at *4 (S.D. Fla. Decl. 3, 2019) ............................................................................................. 5

*Rossi v. Darden*
2016 WL 11501449, *8 (S.D. Fl. 2016) ..................................................................... 20

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*
549 U.S. 422, 430 (2007) ........................................................................................... 2

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*
382 F.3d 1097, 1104-05 (11th Cir. 2004) ................................................................ 10

*Solyom v. World Wide Child Care Corp.*
2015 WL 6167411, *2 (S.D. Fl. 2015) ..................................................................... 20

*Spanakos v. Aronson*
No. 17-80965, 2018 U.S. Dist. LEXIS 238536, 2018 WL 2392011, at *3 (S.D. Fla. Apr. 3, 2018) .................................................................................................................. 18

*Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*
184 F. Supp. 2d 1246, 1263-64 (S.D. Fla. 2001) ................................................. 7, 8

*Tazoe v. Airbus S.A.S.*
631 F.3d 1321, 1330 (11th Cir. 2011) .................................................................. 2, 9

*Timson v. Sampson*
518 F.3d 870, 872 (11th Cir. 2008) ......................................................................... 17

*United States ex rel. Heater v. Holy Cross Hosp., Inc.*
510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) .......................................................... 19

*UPS v. Eclipse IP LLC*
No. 1:11-CV-2138-CAP, 2012 U.S. Dist. LEXIS 202928, at *6 (N.D. Ga. July 3, 2012) ...................................................................................................................................... 16

*Wagner v. First Horizon Pharm. Corp.*
464 F.3d 1273, 1277 (11th Cir. 2006) ................................................................ 18, 19

*Ward v. Kerzner Int'l Hotels, Ltd.*
No. 03-23087-CIV-JORDAN, 2005 U.S. Dist. Lexis 11081, *10 (S.D. Fl. Mar. 30, 2005) ........................................................................................................................................ 7

*Weiland v. Palm Beach County Sheriff's Office*
792 F.3d 1313, 1320 (11th Cir. 2015) ...................................................................... 17

*Wilson v. Island Seas Invs., Ltd.*
    590 F.3d 1264, 1270 (11th Cir. 2009) ...................................................... 3, 4, 5, 9

*Woodard-CM, LLC v. Sunlord Leisure Products, Inc.*
    2022 WL 2341802, *6 (S.D. Fl. 2022) ............................................................. 20

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286, 297 (1980) ............................................................................... 11

*Ziemba v. Cascade Int'l, Inc.*
    256 F.3d 1194, 1202 (11th Cir. 2001) ............................................................. 19

## STATUTES

Fla. Stat. § 48.193(1)(a)(1) ............................................................................. 13, 14, 15

Fla. Stat. § 48.193(1)(a)(2) ..................................................................................... 15

## OTHER AUTHORITIES

Fl. Const. Art. VI, Section 7.2 ................................................................................. 14

## RULES

Fed. R. Civ. P. 9(b). Rule 9(b) ............................................................................... 19

## **Preliminary Statement**

Plaintiffs JTC Skywave Investments Ltd. and Harald McPike ("Plaintiffs") respectfully submit this opposition to Defendants'[1] motion to dismiss for: (i) *forum non conveniens*; (ii) lack of personal jurisdiction; or, in the alternative, (iii) failure to state a claim (the "Motion" and, in citations, "MTD"). In the alternative, Plaintiffs request that the Court: (a) withhold a ruling on the Motion pending jurisdictional discovery; or (b) grant leave to amend the Complaint.

The Complaint alleges that Mart fraudulently induced Plaintiffs into making payments that, Mart claimed, were an investment in an entity that directly or indirectly owned subsidiaries in the U.S., Caribbean, and Europe. Mart's representations turned out not to be true.

Defendants want this case heard in another country or, in the alternative, dismissed. The Motion should be denied for the following reasons.

*This District is a convenient forum.* Mart and Boies reside in the United States. Mart is the sole member of the entity Defendants, which are U.S. entities. In a similar situation, the Eleventh Circuit called the U.S. defendant's motivations for seeking to litigate outside the country the "elephant in the room," writing that "[o]ne would… think that it would be more convenient for Citigroup to litigate in the Southern District of Florida than in Mexico." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1343 (11th Cir. 2020). The same is true here: there is reason to doubt Defendants' reasons for wanting to avoid the U.S. court system.

In an attempt to distract from that "elephant in the room," Defendants impugn Plaintiffs' motives for bringing suit here. Simply put, Plaintiffs filed suit here because Florida is where Defendants have said they can be found or contacted concerning the businesses at issue in this case. Plaintiffs should not be criticized for doing so. As the Eleventh Circuit said, "it would be ironic to fault the foreign plaintiffs for their willingness to travel to the United States to sue [a defendant] in its country of citizenship." *Otto Candies*, 963 F.3d at 1345.

*This Court has personal jurisdiction over all Defendants.* Defendants offer only bare, self-serving statements that they do not reside in Florida. They offer no evidence. As a result, they fail to make even a *prima facie* case for dismissal. In any event, substantial documentary evidence supports the exercise of personal jurisdiction over the Defendants. They registered to

---

[1] "Defendants" are Andrew N. Mart ("Mart"), Deanna Boies ("Boies"), Luminescence LLC, a Florida limited liability company ("Luminescence (FL)"), Luminescence LLC, an Illinois limited liability company ("Luminescence (IL)"), and Luminastra LLC.

do business here, claimed Florida residences, held Florida driver's licenses, and voted in Florida. Nevertheless, if, after reviewing the evidence, the Court believes there remains a question as to personal jurisdiction, Plaintiffs request that the Court hold in abeyance a decision on the Motion pending jurisdictional discovery, which Plaintiffs have already served.

*The Court should not dismiss the Complaint for failure to state a claim*. Defendants cannot legitimately claim that the Complaint offers insufficient factual detail to understand the precise nature of the claims against them because Mart's Declaration is replete with specific responses to the allegations, including the time and location of relevant communications, witnesses, and the financial transactions at issue. If, however, the Court believes that the parties and the Court would benefit from additional factual detail in the pleading, Plaintiffs respectfully request leave to replead to include additional detail concerning the fraud and conspiracy claims.

For these reasons, Plaintiffs respectfully request that the Motion be denied.

<u>**Argument**</u>

**I.** *Forum Non Conveniens.*

    **A.**     **Applicable Law.**

Under the doctrine of *forum non conveniens*, "when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (quotation marks, alterations, and citation omitted).

Defendants "bear[] a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007). Moreover, "[a] defendant has the burden of persuasion as to all elements of a *forum non conveniens* motion." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). "To satisfy this burden, the defendant must establish that '(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *Fresh Results, Ltd. Liab. Co. v. ASF Holland, B.V.*, 921 F.3d 1043, 1048-49 (11th Cir. 2019) (quoting *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Million Air, Inc.*, 251 F.3d at 1310-11)).

Defendants have not carried that heavy burden.

### B.     Deference to Plaintiffs' Choice of Forum.

Defendants argue that "Plaintiffs are entitled to no deference" in their choice of forum. [MTD, p. 7.] That is incorrect as a matter of law.

Even though a foreign plaintiff's choice of forum "applie[s] with less than maximum force*," Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 261 (1981), it still applies. "Reduced deference is 'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for *forum non conveniens* is the exception rather than the rule.'" *Otto Candies,* 963 F.3d at 1339 (quoting *Lacey v. Cessna Aircraft Co*., 862 F.2d 38, 45-46 (3d Cir. 1988)). *See also In re W. Caribbean Crew Members*, 632 F. Supp. 2d 1193, 1201 (S.D. Fla. 2009) (denying motion to dismiss for *forum non conveniens,* and explaining that "'less deference' to their choice of forum does not mean 'no deference.'"). The Court therefore must still afford deference to Plaintiffs' choice to litigate in the U.S, where the Defendants are located.

### C.     Application of the Private and Public Factors.

#### 1.     Adequate Alternative Forum.

Plaintiffs do not contest that there exists an adequate alternative forum.

#### 2.     Private Interest Factors.

Courts considering a motion to dismiss for *forum non conveniens* should evaluate "the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment." *Wilson v. Island Seas Invs., Ltd*., 590 F.3d 1264, 1270 (11th Cir. 2009). "These factors are not exhaustive, and the district court should be flexible in applying them." *Id*.

The Court should not review the factors in the abstract. "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

Here, Plaintiffs' primary claim is for fraud and fraudulent inducement. [Compl. ¶¶ 60-66.] Under Florida law, the elements of a claim for fraudulent inducement are: "(1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that  the representation was false; (3) the representor intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the

representation and was injured as a result." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029-30 (11th Cir. 2017) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Plaintiffs' first cause of action alleges that Mart falsely represented "(i) the nature and corporate structure of entities purportedly owned directly and indirectly by Luminastra; (ii) the business operations of those entities; and (iii) that Plaintiffs, by providing funding to Luminastra, would acquire specified equity interests in Luminastra and, in so doing, indirect ownership of the subsidiaries." [Compl.. ¶ 61.]

Plaintiffs further allege that Boies participated in the scheme by signing the Call Option Agreements [Compl. ¶¶ 24, 27], and that she was personally involved in the corporate shell game that used similarly named entities in different jurisdictions to route money to Mart and Boies. [*Id*. ¶¶ 43-48.] These allegations form the basis of the second cause of action, for conspiracy.

Thus, the Court should analyze the "private interests" with reference to Plaintiffs' allegations that Mart misrepresented facts concerning the business entities that he formed and controlled, as well as Ms. Boies' role in those entities.

### (a)    The Relevant Forum for Purposes of the Analysis.

Defendants' *forum non conveniens* argument asserts that "[t]here is no evidence in Florida because nothing happened here." [Opp. at 8.] Defendants' argument is based on an incorrect legal premise. When determining whether to dismiss on the ground of *forum non conveniens* in favor of a foreign forum, the relevant forum is not Florida, it is the United States as a whole. *Wilson*, 590 F.3d at 1270 (finding that it was error for the district court to consider contacts only with the Southern District of Florida, rather than the entire United States). So, Defendants must "establish oppressiveness and vexation…out of all proportion to plaintiff's convenience" from having to litigate in the United States. *Am. Dredging Co.*, 510 U.S. at 447-448. As shown below, they cannot do so.

### (b)    Relative Ease of Access to Proof.

The parties' access to evidence is "[p]erhaps the most important 'private interest.'" *Ford v. Brown*, 319 F.3d at 1308. In this case, the most important evidence will be communications between Mart and McPike. Proof of those communications will be testimony from the parties and documents in their possession. This is confirmed by Mart, who describes at length the importance of communications between him and McPike, [Mart Decl., ECF 18-1, ¶¶ 16, 17, 29, 33], and who calls McPike "the central witness in this case." [*Id.* ¶ 33.]

Obtaining testimony from Mart and McPike is just as convenient here as in the Bahamas. Indeed, Defendants admit that, "it is as convenient for [Mart] to travel to the Bahamas … as it is for him to travel to Florida." [Opp. at 8.] With that admission of equal convenience, Defendants cannot show "oppressiveness and vexation to a defendant," *Am. Dredging Co. v. Miller*, 510 U.S. at 447-448, from giving or obtaining testimony in this District.

With respect to documents in the parties' possession—which undoubtedly will be the overwhelming majority of relevant documents—electronic discovery makes the physical location of documents (electronic or otherwise) "virtually irrelevant" for any convenience analysis. *See Fruitstone v. Spartan Race Inc*., 464 F. Supp. 3d 1268, 1282-83 (S.D. Fla. 2020) (collecting cases, and finding physical location of documents "virtually irrelevant"); *Ritter v. Metropolitan Cas. Ins. Co*., No. 4:19-CV-10105-KMM, 2019 U.S. Dist. LEXIS 227839, 2019 WL 8014511, at *4 (S.D. Fla. Decl. 3, 2019) ("In most cases today, including this one, technological advancements have rendered the physical location of documents and other types of proof virtually irrelevant.").  Other relevant records are in the United States.

### i.      Bank and Financial Discovery.

Mart says that Plaintiffs' funds went "to a Citibank account owned by Luminastra, LLC" [Mart Decl. ¶ 24], the "account through which all funding for the operations flowed." [*Id*. ¶ 12.] While Mart states that those accounts are outside of Florida [*id*. ¶ 25], that is not the relevant inquiry. The question is whether those accounts are located in the United States, *Wilson*, 590 F.3d at 1270, which they are. [*Id*. ¶ 12.]. Compelling the production of those documents here will be easier than obtaining them in the U.S. for use in a foreign action.

Similarly, Mart contends that Luminescence LLC (FL) "held bank accounts outside of Florida." [Mart Decl. ¶ 13.] Mart does not claim that those accounts were outside of the U.S., so Defendants have not shown that obtaining those records would be easier outside the U.S. than it would here in the U.S.

Because the relevant forum is the United States as a whole, *Wilson*, 590 F.3d at 1270, and because all bank transactions flowed through the United States, the United States is the forum in which it will be most convenient to obtain those records.

### ii.      Real Estate and Tangible Items.

Mart asserts that he formed Luminescence (IL) "to own real estate in Chicago where [he] could install Network towers, transmitters, antennas, receivers, modems and other

telecommunication technology [he] developed to communicate with devices colocated next to the Chicago Mercantile Exchange." [Mart Decl. ¶ 12.]

That entity, Luminescence (IL), purported to issue a "Call Option Agreement," signed by Boies, to Luminastra Ltd. as part of the transactions that Mart said would effectuate Plaintiffs' investment. [Compl. ¶ 27.] Whether and to what extent Luminescence (IL) actually owned real estate, equipment, and engaged in a legitimate business related to Plaintiffs' investment therefore is likely to involve discovery concerning that real estate, as well as the "[n]etwork towers, transmitters, antennas, receivers, modems and other telecommunication technology" that Mart says are located in the United States. [Mart. Decl. ¶ 12.] Indeed, the only invoices that Mart refers to show services in Illinois and Germany, but none in either the Bahamas or St. Kitts and Nevis. [Mart Decl. Exh. 1]. Thus, discovery concerning the Defendants' alleged real estate holdings, equipment, and operations will need to be taken in the United States.

(c)	<strong>Access to Willing and Unwilling Witnesses.</strong>

With respect to testimony from the parties, the Southern District of Florida is at least as convenient as the Bahamas because Defendants admit that travel to the Bahamas and the Southern District of Florida is equally convenient. [MTD, p. 8.]

Mart acknowledges the involvement of his "attorneys at the Miami office of Greenspoon Marder," located in this District, but insists that they have only limited "nonprivileged, relevant knowledge." [Mart Decl. ¶ 35.] Mart, therefore, has strongly suggested that his Miami attorneys will not be willing witnesses. Yet, they are relevant to this case. They communicated with "McPike's representative" about the dispute that "ultimately led to this litigation." [*Id.* ¶ 35.] Greenspoon Marder's Miami office directed delivery of "know your customer" information to its office in this District, and also represented to McPike's representative that, with respect to Luminastra shares at issue in this case, "GM is the client of record. Nothing will happen until we have received completed diligence." [Exh. T.][2] Given that the scope of discovery concerning the Greenspoon Marder firm is likely to be an issue in this case, this Court is far better qualified to supervise that discovery than a foreign court would be.

With respect to witnesses located in the Bahamas, most of those that Mart identifies work

---

[2] References to Exh. ____ are to the exhibits to the Declaration of Gregory A. Blue, attached hereto as Exhibit 1.

for Plaintiffs or their affiliates [Mart Decl. ¶ 32.] and, significantly, most are unspecified corporate representatives of entities affiliated with McPike [*id*. ¶ 32 (b), (j), (k), (l), (m), (n)] or current employees. [Id. ¶ 32 (b), (j), (k), (l), (m).] Plaintiffs commit to make themselves, corporate representatives, and current employees available for discovery in this case and to have them appear voluntarily for discovery and trial (consistent with the applicable limits on the scope of discovery). See *Sun Tr. Bank v. Sun Int'l Hotels, Ltd*., 184 F. Supp. 2d 1246, 1263-64 (S.D. Fla. 2001) (denying motion to dismiss for *forum non conveniens* and noting that "the majority of witnesses who reside in the Bahamas are defendants' own agents and employees, who are under defendants' control and will appear voluntarily."). *See also Otto Candies,* 963 F.3d at 1344 ("the general rule is that plaintiffs are required to make themselves available for examination in the district in which they bring suit.").

Moreover, Judges in this District often have noted that travel between the Bahamas and this District is easy and convenient. As the Court explained in *Sun Trust Bank*, "Defendant has not established that it would be particularly inconvenient or costly to transport these witnesses [from the Bahamas]. Indeed, such a contention would be difficult to sustain in light of Paradise Island's proximity to South Florida, and the ease and frequency of travel between the two locations." *Sun Tr. Bank*, 184 F. Supp. 2d at 1264. See also *Ward v. Kerzner Int'l Hotels, Ltd.*, No. 03-23087-CIV-JORDAN, 2005 U.S. Dist. Lexis 11081, *10 (S.D. Fl. Mar. 30, 2005) (same).

There will, however, be a need for discovery in the U.S. from non-party witnesses. Boies claims in support of the Motion that, "[o]ther than executing agreements and documents for these companies, *I had no role in the operation of the companies* or in the negotiation or drafting of any agreements by or between them and any other company." [Boies Decl., ECF 18-2, ¶ 5 (emphasis added).] Boies has said otherwise. In a Skype meeting video that Mart created for "our investor, Mr. McPike" [Exh. O at 2:2-5], and in an accompanying "Attendees" list that Mart provided, Boies was identified as "Director." [Exhs. R, S.] In that video, she stated that she would "step in…if we do have, for example, an issue with getting vendor support, or getting certain products, getting certain products shipped, getting certain products in, then I'm kind of the heavy person, the strong arm that steps in and tries to get that facilitated to a better end….And I get on the phone, and get busy with communications if we're having trouble obtaining hardware, software or vendor support." [Exh. O at 6:13-7:11.] Boies' video recorded statements stand in contrast to Defendants' claim that "[s]he has nothing to do with this case."

[MTD, p. 8.]

In the same video, Boies stated that, in working on Mart's projects, she "interface[s] mostly with Andrew [Mart], Josh Hillman and Laura [Brewer]." [Exh. O, at 6:18-19.] Hillman is located in the Chicago area [*Id*. at 4:11-12] and claims to have worked for more than seven years on radio equipment and to "do all the system and network administration." [*Id*. at 4:22-23.] Brewer, who said she handled "administrative support" for Mart and "a little bit of everything" for the companies [Exh. O at 6:1-12], is located in Colorado.[3] Based on Boies' claim that she "had no role in the operation of the companies," [Boies Decl., ¶ 5] Hillman and Brewer likely will be witnesses concerning their interactions with Boies as well as Mart.

### (d)     Ability to Compel Testimony

Other than the parties themselves, their affiliates, and individuals in their employ, Mart has simply listed individuals who he believes have general knowledge of his relationship with McPike and unrelated work that he performed with or for McPike in the past. [Mart Decl. ¶ 33(d) (McPike's ex-wife, "who for years paid me to develop software and consult with McPike for his companies"; 33(f) (Morley for "other knowledge regarding the relationship between [Mart] and McPike"); 33(h) (McPaddon "who works for McPike and has knowledge regarding the relationship between McPike and [Mart])). Mart then lists eleven "[o]ther current and former representatives and employees of McPike or his companies" [*id*. ¶ 33(n)], without any indication why those people might have knowledge and information relevant to the claims in this case. Defendants, therefore, do not provide a basis for this Court to conclude that "these matters require live testimony, and that the necessary evidence could not be procured through letters rogatory or some similar procedure." *Sun Tr. Bank*, 184 F. Supp. 2d at 1264.

### (e)     Possibility of View of Premises.

This case likely does not involve any need to view or visit a location. Nevertheless, Mart contends that Defendant Luminescence (IL) was formed to own real estate and equipment located in the United States [Mart Decl. ¶ 12; Exh. O at 4:11-5:8 (Hillman explaining equipment in Chicago area)] and if any view of premises is necessary it would be located in the U.S. There is no need to view premises located outside the United States.

---

[3] Brewer's location in Colorado is based on information from public websites as reviewed by counsel.

(f)      **Enforceability of Judgment.**

Defendants do not identify the location of their assets and, relatedly, have not demonstrated that a Bahamas or St. Kitts and Nevis judgment would be effective to reach those assets to satisfy a judgment against them. This factor therefore does not weigh in favor of dismissal. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 375 (5th Cir. 1992) (finding that the "the district court was unreasonable in weighing this factor in favor of" dismissal when the "record does not establish the location of [the defendant's] assets"); *Glob. Med. Sols. v. Simon*, No. CV 12-04686 MMM (FMOx), 2013 U.S. Dist. LEXIS 207019, at *33 (C.D. Cal. Jan. 10, 2013) ("The court cannot determine whether or not this factor favors dismissal because it is unclear where [defendant's] assets are located, and thus where a judgment against him could be enforced.").

3.      **Factors of Public Interest.**

The public factors also weigh against dismissal. "'The public factors 'pertain to the relative interests of the two fora.'" *Fresh Results*, 921 F.3d at 1049 (quoting *Tazoe*, 631 F.3d at 1333). The Court should consider, among other things, "the administrative difficulties flowing from court congestion,"[4] "the 'local interest in having localized controversies decided at home,'" and "'the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509). The Court "may also consider what law will govern the action, including 'the avoidance of unnecessary problems in conflicts of laws' and 'the application of foreign law.'" *Id.*

In addressing the public interest factors, Defendants claim that "Florida has no interest in this dispute." [MTD, p. 9.] Again, Defendants frame the issue incorrectly. The issue is not whether Florida has an interest in the dispute, but whether the United States does. *Wilson*, 590 F.3d at 1271; *Otto Candies*, 963 F.3d at 1354 (remanding with instructions to consider "the United States' interests under the public interest factors"); *Reed v. Royal Caribbean Cruises, Ltd.*, No. 20-cv-24979-RAR, 2021 U.S. Dist. LEXIS 180657, at *31, 2021 WL 4307048 (S.D.

---

[4] While citing to this factor, Defendants do not claim that there would be any administrative burdens posed by trial. In any event, judges in this District have recognized that "this factor should be accorded little or no weight in the analysis as this District is the second fastest in the country in terms of the median time in months from filing to disposition of civil cases." *Results v. ASF Holland, B.V.*, No. 17-cv-60949-BLOOM/Valle, 2019 U.S. Dist. LEXIS 160791, at *14 (S.D. Fla. Sept. 20, 2019).

Fla. Sep. 22, 2021) (finding that, in weighing public interest factors "Defendant wrongly focuses on Florida alone," instead of the United States as a whole).

The United States has an interest in this litigation. *First*, the Complaint alleges a financial fraud and Mart acknowledges that all of the funds involved were sent to the United States. [Mart Decl. ¶¶ 12, 26.] *Second*, the alleged fraud emanated at least in part from people and entities in the United States. There is no contention that Boies was anywhere other than in the United States when she signed the Call Option Agreement, or that the Defendant entities were located anywhere other than the U.S. In addition, Mart claims that the Plaintiffs' investments were used to fund substantial physical operations involving the use of real estate and equipment in the United States. [Mart Decl. Exh. 1.]

The only other public factor that Defendants cite is the potential choice of law. In doing so, they cite to the choice of law provision in the Call Option Agreement. [MTD, p. 9.] That is not a reason to dismiss. *First*, Plaintiffs are not suing to enforce the Call Option Agreement, they are suing for fraud and fraudulent inducement in which the Call Option Agreement was used as an instrument of the fraud. Defendants have made no showing that the choice of law provision in the Call Option Agreement will be relevant, let alone dispositive.

*Second*, Defendants have not shown that there would be a conflict of laws with either the Bahamas or St. Kitts and Nevis. Indeed, their expert declarations admit that both jurisdictions would recognize common law fraud and conspiracy claims with elements that do not materially differ from those in U.S. jurisdictions. [Maynard Decl., ECF 20-1, at ¶¶ 25-29; Walwyn Decl., ECF 18-3, at ¶ 14.] When, as here, there is no evidence that there would be a conflict of laws, this factor does not weigh in favor of dismissal. *See In re W. Caribbean Crew Members*, 632 F. Supp. 2d 1193, 1204 (S.D. Fla. 2009) ("it is unclear at this juncture whether there will be any actual conflict between Colombian law and United States law on the issues of liability and damages necessitating a choice of law analysis."). In any event, the possibility of a conflict of laws is not dispositive. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104-05 (11th Cir. 2004) ("while the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight.").

For all these reasons, the Defendants have not carried their very heavy burden to "establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience," or that this District is "inappropriate because of considerations affecting the

court's own administrative and legal problems." *Am. Dredging Co.*, 510 U.S. at 447-448 (quotation marks, alterations, and citation omitted). The motion to dismiss for *forum non conveniens* should be denied.

## II. Personal Jurisdiction.

### A. Applicable Law.

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262, (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile…" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Courts may exercise specific jurisdiction over out-of-state individuals if they have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The due-process analysis thus has a contacts prong and a reasonableness prong. See *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). A party's contacts with a forum must be sufficient for the party to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In considering whether personal jurisdiction exists over the Defendants, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

As explained below, this Court has personal jurisdiction over each of the defendants.

### B. The Defendants Are Subject to Personal Jurisdiction in Florida.

#### 1. Mart.

The Complaint alleges that Mart is subject to both general and specific jurisdiction in Florida [Compl. ¶¶ 9-11]. Mart claims that he is "a fulltime resident of California since August 2023" [Mart Decl. ¶2] but offers no factual detail or evidence for that assertion. Mart provides no detail or evidence concerning where in California he resides, whether he owns or leases property there, where he is registered to vote, where he holds a driver's license, and whether he is a permanent or only a temporary resident of California with an intent to return to Florida.

Mart's Declaration therefore is insufficient as a matter of law. As the Eleventh Circuit

has explained, when "the defendant submits affidavits [contradicting personal jurisdiction], the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction *unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction*." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (emphasis added). When, as is the case with Mart, a defendant offers only a conclusory allegation that he is not subject to personal jurisdiction, the defendant's claims "do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). On that basis alone, Mart's motion fails.

In any event, throughout the relevant time period, and even after the Complaint was filed, Mart made public statements and took actions consistent with permanent residence in Florida.

In 2010, ten years after he claims to have become a full time Bahamas resident" [Mart Decl. ¶ 3], Mart applied for a renewal Florida drivers' license with the representation that he was, as of that time, a Florida resident. [Exh. H, p. 2.] On December 3, 2018, he obtained a renewal Florida drivers' license using Boies' Tallahassee address [*Id.*, p. 5]. In 2019 he changed his "Residential Address" to Glades Road in Boca Raton [*id.*, p. 8], where it remains. [*Id.*, p. 11.] Mart's Declaration is silent as to whether he obtained a California driver's license.

Also during the time that Mart claims to have resided in the Bahamas, he used a Port St. Lucie address (which he claims to be his father's [Mart. Decl. ¶ 5]), to vote in Florida elections, including the 2012, 2014, 2016, 2018, 2020, and 2022 general elections. [Exh. I.] Mart's Declaration is silent as to whether or when he registered to vote in California, or whether he has ever voted anywhere other than Florida.

Mart's driver's license and voting record establish a *prima facie* case of general jurisdiction over him in Florida. *See In re Bal Harbour Quarzo, LLC*, 634 B.R. 827, 833 (Bankr. S.D. Fla. 2021) (finding a *prima facie* case of general jurisdiction in the U.S. over a "United States citizen with a Social Security number, who is registered to vote in Florida, and who has a Florida driver's license"); *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1294 n.5 (S.D. Fla. 2021) (noting that, if evidence concerning a driver's license had been presented, "an active Florida driver's license would be relevant to the Court's analysis of general jurisdiction").[5]

---

[5] As additional evidence of Mart's continuous and pervasive connections with Florida, Mart maintained other Florida entities with a Florida address. In 2016, Mart formed Skywave LLC

In light of this evidence, Mart's unsupported declaration that he is a resident of California cannot form the basis for a dismissal based on lack of personal jurisdiction.

Mart also is subject to specific jurisdiction. Mart represented that Plaintiffs' investment would result in an indirect interest in Luminescence based in Boca Raton, Fl. [Compl. ¶¶ 20, 22.] According to Mart, "the Luminescence, LLC entities and Luminastra, LLC are single-member limited liability companies owned solely by Mart." [Exh. P, Notice of Removal, ¶18.] At relevant times during the transactions alleged in the Complaint, the Luminescence entities represented that their principal place of business was in Florida. [Exh. B, pp. 2-12, Exh. C, pp. 2-5.] Therefore, Plaintiffs' claims arise out of Mart "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193(1)(a)(1), Fla. Stat.

Moreover, the Complaint alleges that Mart conspired with Boies. Boies resided in Florida at the time and was a Manager of Luminescence (IL), which had only a Florida address. Mart's conspiracy with defendants who committed tortious acts in Florida subjects him to personal jurisdiction here. *See NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) ("if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute."); *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1164-65 (S.D. Fla. 2012) (same, citing *NHB Advisors*).

      **2.**      **Boies.**

While Boies claims to have relocated to Illinois in 2019, she also provides no detail or substantiating evidence. Boies also does not provide a date when she allegedly moved. [Boies Decl. ¶ 3.] That omission is significant because the Call Option Agreements, which Boies does not deny signing, had an "Effective Date" of September 27, 2019. [Exh. A, pp. 2-7, 8-11.] Boies continued to represent that she was a Florida resident both immediately before and for a year after the Call Option Agreements' Effective Date.

---

and Topside LLC, Florida limited liability companies. [Exh. F, pp. 2, 10.] In 2019, 2020, and 2021, Mart claimed that those entities had a principal place of business, and that he maintained an address, at 1811 NW 51st St. Apt. 280, Fort Lauderdale, FL. [*Id.*, pp. 6-8, 14-16.]

*First,* Boies represented in corporate filings for Luminescence (IL) that her address, and the company's principal place of business, was in Tallahassee. [Exh. C, pp. 2-5.]⁶ As of August 29, 2019, just one month before the Effective Date of the Call Option Agreement, Boies represented in the Luminescence (IL) Annual Report that the company's "Principal Place of Business" was located at her home in Tallahassee, as it had been since the company's formation. [Exh. C, p. 5.] That remained the Company's listed "Principal Place of Business" until it was changed by the filing of an Annual Report on July 14, 2020 (*i.e.* after the Call Option Agreement Effective Date) to an address in Illinois. [*Id.*, p. 6.]

Moreover, Boies, who claims to have permanently left Florida in 2019, voted in the March 17, 2020, Presidential Primary (by absentee ballot) and the November 3, 2020, general election (by absentee ballot) in Florida. [Exh. K.] She would only be permitted to do so if she remained a Florida resident at that time. *See* Fl. Const. Art. VI, Section 7.2 ("Only a citizen of the United States who is at least eighteen years of age and who is a permanent resident of the state, if registered as provided by law, shall be an elector of the county where registered."). Boies' 2020 voting record in Florida is difficult to reconcile with her claim to have permanently left Florida for an Illinois residence in 2019. [Boies Decl. ¶ 3.]

As with Mart, Boies' public filings, voting record, and drivers' license are *prima facie* evidence that Boies was a resident of this State at the time of the tortious acts alleged in the Complaint. Boies therefore is subject to this Court's jurisdiction.

As with Mart, Boies also is subject to specific jurisdiction. Boies identified her home in Tallahassee as the principal office of the Luminescence entities. [Exh. B, pp. 2-8, Exh. C, pp. 2-5.] According to the corporate filings for Luminescence (IL), that entity was "managed by" Boies—and only Boies—as "Manager" in Florida. [*Id.*] Therefore, Plaintiffs' claims arise out of Boies "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193(1)(a)(1), Fla. Stat.

Boies also signed Call Option Agreements [Exh. A] while residing in Florida, and while

---

⁶ This Court can take judicial notice of corporate filings with a Secretary of State. *See Baris v. Exhibits One, Inc.*, No. 17-cv-62429-BLOOM/Valle, 2018 U.S. Dist. LEXIS 248876, at *2 n.1 (S.D. Fla. Apr. 20, 2018) (taking judicial notice of principal place of business as recorded with Florida Secretary of State).

Luminescence (IL) maintained its principal place of business at her home in Florida. Boies does not deny that she was in Florida when she signed the Call Option Agreements. Therefore, Plaintiffs' claims arise out of Boies "[c]omitting a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat.

For these reasons, Boies is subject to personal jurisdiction here.

### 3. Luminescence (FL).

Luminescence (FL) is a Florida limited liability company. [Compl. ¶ 15; Mart Decl. ¶ 13; Exh. B.] It is subject to general jurisdiction here because a corporation "may be sued on any and all claims" in its place of incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

### 4. Luminescence (IL).

Luminescence (IL) is an Illinois limited liability company. [Compl. ¶ 16; Mart Decl. ¶ 12; Exh. C.] At relevant times, Luminescence (IL) identified its "Principal Place of Business" as Boies' home in Tallahassee. [See Exh. C, pp. 2-5.] The claims against Luminescence (IL) are based on its role in the fraud, including issuing a false and misleading Call Option Agreement, and therefore are arise out of its "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," § 48.193(1)(a)(1), Fla. Stat., and "[c]omitting a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat.

### 5. Luminastra LLC.

Plaintiffs' investment was supposed to be made in Luminastra Ltd. [Compl. ¶ 2], which in turn would directly and indirectly own Luminescence (FL) and other entities. [*Id.* ¶ 3, 22.] Mart, Boies, and Luminescence (IL) represented that Plaintiffs' investments would be in Luminastra Ltd. Mart now admits that all funding actually flowed through Luminastra LLC. [Mart Decl. ¶ 12.] Luminastra LLC therefore was the conduit for and recipient of all of the "amounts corresponding to the funding schedule from the Call Option Agreement" [Mart Decl. ¶ 23] issued by Luminescence (IL) while its "Manager," Boies, was actually located in Florida. Mart's admissions track the allegations of the Complaint, which alleges that "the purported Luminastra Ltd. subsidiaries were and are owned not by Luminastra Ltd. but by Mart and/or Boies, who diverted Plaintiffs' money to other entities." [Compl. ¶ 5.]

As more fully set forth below, Plaintiffs therefore have established the elements of a claim for conspiracy among the Defendants, of which Luminastra LLC is an integral part. Luminastra LLC's participation in the conspiracy together with other Defendants located in

Florida subjects it to personal jurisdiction in this District. *NHB Advisors*, 95 So. 3d at 448.

This Court therefore has personal jurisdiction over all of the Defendants.

### 6.     Defendants' Post-Complaint Actions to Sever their Ties With Florida Do Not Change the Result.

After Plaintiffs served Boies with a copy of the Summons and Complaint, Defendants attempted to systematically sever their ties with Florida and shut down the defendant entities.

On January 31, 2024, Mart filed an Annual Report for Luminescence (FL) listing himself and Boies as Managers, both with an address in Boca Raton. [Exh. B at 16.] Boies was served with the Summons and Complaint on February 3, 2024. [Exh. Q.] The next day, Mart filed an Amended Annual Report eliminating Boies from as a Manager of Luminescence (FL). [Exh. B at 17.] On April 2, 2024, Mart dissolved Luminescence (FL) [Exh. G at 2.]

On February 16, 2024, Mart filed a quitclaim deed transferring Deanna Boies' home in Illinois, from "Luminescence, LLC, a limited liability company, of Boca Raton, State of Florida" to an entity called Caltronica, LLC. [Exh. M.] On April 1, 2024, Mart terminated Luminescence (IL) [Exh. G at 3.] The same day, he also terminated Luminastra LLC. [*Id*. at 4.]

On April 3, 2024, Mart dissolved Skywave LLC and Topside LLC, Florida limited liability companies that he had maintained with a Florida address since 2016. [*Id*. at 5, 6.] On April 11, 2024, Mart requested that his Florida voter registration be removed. [Exh. I.]

The Defendants' post-filing purges do not alter analysis because post-filing conduct is not relevant for purposes of personal jurisdiction. *See UPS v. Eclipse IP LLC*, No. 1:11-CV-2138-CAP, 2012 U.S. Dist. LEXIS 202928, at *6 (N.D. Ga. July 3, 2012) (collecting cases, and stating that "post-filing contacts should not be considered" in a personal jurisdiction analysis); *Polywad, Inc. v. Able's Sporting, Inc.*, No. 5:23-cv-00512-TES, 2024 U.S. Dist. LEXIS 74059, at *12 n.5, 2024 WL 1744068 (M.D. Ga. Apr. 23, 2024) (citing *UPS v. Eclipse* IP for the proposition that "the majority of federal courts that have addressed this issue have determined that 'post-filing contacts should not be considered' when assessing personal jurisdiction.").

### C.     In the Alternative, Plaintiffs Request that the Court Withhold Ruling on the Motion to Dismiss Pending Jurisdictional Discovery.

In the alternative, Plaintiffs respectfully request that the Court withhold ruling on the Motion to Dismiss pending jurisdictional discovery. *See Rd. Space Media, LLC v. Miami-Dade Cty.*, Civil Action No. 19-21971-Civ-Scola, 2020 U.S. Dist. LEXIS 99657, at *4 (S.D. Fla. Apr.

23, 2020) (collecting cases concerning jurisdictional discovery while motion to dismiss is pending and suggesting plaintiff should have "formally moved for the Court to withhold ruling on the motion to dismiss and compel jurisdictional discovery").

### III.   The Court Should Deny Defendants' Motion to Dismiss Failure to State a Claim.

#### A.   Applicable Law

The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, S.A., 711 F.2d 989, 995 (11th Cir. 1983). In determining whether the Complaint clears that bar, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).

Defendants argue that the Complaint is a "shotgun pleading" [MTD, p. 16], that fails to plead fraud with specificity. That argument is without merit.

#### B.   The Complaint is Not a "Shotgun Pleading."

"Complaints that violate either Rule 8(a)(2) or Rule 10(b),[7] or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  As the Eleventh Circuit has explained, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. (11th Cir. 2015). For that reason, a complaint should only be dismissed as a "shotgun pleading" only when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325 (quoting *Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (emphasis in *Weiland*).

Defendants do not argue that it is "virtually impossible" to know which allegations of fact are intended to support which claims. In fact, the opposite is true: Mart was able to review the allegations and aver with certainty that "[n]one of the alleged events referred to in the Complaint occurred in Florida." [Mart Decl., ¶ 6]. Mart provides a detailed refutation of the claims [*id.* at ¶¶ 11-13, 16, 21-29, 31-32], identifies the participants in the relevant communications [*id.* at ¶ 17], the location of the relevant communications [*id.*], witnesses to those communications [*id.* at ¶ 33],

---

[7] Defendants do not seek dismissal under Rule 10(b).

and the flow money for every payment alleged. [*Id.* at ¶¶ 12, 13, 23, 24, 25, 26, 27.] He even provides copies of what he says are relevant invoices. [*Id.* at ¶ 23, Exh. 1.] Mart's detailed rebuttal of the Complaint belies Defendants' claims that the allegations are not sufficiently specific to enable the Defendants to understand them or to formulate a response.[8]

      **C.**    **Plaintiffs sufficiently allege the role of each Defendant.**

Defendants also argue that the Complaint does not sufficiently identify the role of each defendant. Again, that argument is without merit. The Complaint alleges with particularity that:

- Mart misrepresented the nature and corporate structure of the purported investment. [Compl. ¶¶ 3- 5, 20-23, 39-40, 44.]

- Boies signed a Call Option Agreement as Director of Luminastra Ltd. for the purpose and with the effect of fraudulently inducing Plaintiffs to invest in Luminastra Ltd. and to transfer money intended as an investment in Luminastra Ltd. [Compl. ¶¶ 24, 27, 70].

- Mart and Boies fraudulently induced Plaintiffs to send more than $12 million to Luminastra based on Mart's and Boies' false representations. [Compl., ¶¶ 1, 43.]

- Mart directed payments to be made to Luminescence (IL) [Compl. ¶ 46], which owned Boies' personal residence. [Compl., ¶ 47].

- Mart and Boies are Managers of Luminescence FL.  [Compl., ¶ 48].

Plaintiffs allege that the entity Defendants are under Mart's and Boies' control. [Compl. ¶¶ 27(b), 43, 48, 71, 74.] Indeed, Mart stated that he is the only member of each entity. [Exh. P at ¶18.] The Complaint also alleges when and how the entities acted through Boies. [Compl. ¶ 24, 27, 45, 48.] Defendants therefore can easily comprehend and respond to the allegations that the entities acted through their single Member (Mart) and their only Managers (Mart and Boies).

This is more than sufficient particularity. "[U]nder these circumstances—a group of related defendant entities with overlapping levels of control—no specific parsing of the individualized misconduct…is necessary." *Peoples Home Health v. Case N Covenant Home Health Care*, No. 3:20-cv-5523-MCR-HTC, 2020 U.S. Dist. LEXIS 259828, at *6, 2020 WL 12309341, (N.D. Fla. Oct. 15, 2020). *See also Spanakos v. Aronson*, No. 17-80965, 2018 U.S. Dist. LEXIS 238536, 2018 WL 2392011, at *3 (S.D. Fla. Apr. 3, 2018) (finding allegations grouping the conduct of the

---

[8] Even if the Complaint were a "shotgun pleading," the proper course of action would be for the Court to issue an Order pursuant to Rule 12(e), directing Plaintiffs to replead their claims.  *See e.g. Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006).

defendants together sufficient to provide general notice of alleged unlawful conduct under Rule 8 where one defendant owned, managed, and operated the other defendants).

> **D.      Plaintiffs' Fraud Claim is Plead with Requisite Particularity**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) has two purposes: to inform defendants of the precise misconduct alleged and to protect them against improper harm to their goodwill and reputations. *Wagner*, 464 F.3d at 1277. Rule 9(b) must, however, be harmonized with Rule 8(a). *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (explaining that Rule 9(b) "must not abrogate the concept of notice pleading.").

"Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *United States ex rel. Heater v. Holy Cross Hosp., Inc*., 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotation omitted). *See also Pearson v. Deutsche Bank AG*, No. 21-cv-22437, 2022 U.S. Dist. LEXIS 57846, at *13-14 (S.D. Fla. Mar. 29, 2022) (same).

The Complaint alleges that: (i) Mart proposed an investment providing majority equity in a top-level entity that held specified subsidiaries [Compl., ¶¶ 1-2, 19 and 23]; (ii) Mart falsely represented that Luminastra Ltd. owned 100% of the equity interests of certain entities, when those entities were owned by Mart and/or Boies, who diverted Plaintiffs' investments to other entities [*id.*, ¶¶ 3-5, 20-22]; (iii) through a Call Option Agreement, Luminastra, Mart, and Boies, fraudulently offered equity in Luminastra Ltd. in exchange for $12 million payable in installments [*id.*, ¶¶ 24-25]; (iv) Mart funneled Plaintiffs' payments to other entities owned and controlled by Mart and/or Boies. [*id.*, ¶¶ 29, 42-45]; and (v) Plaintiffs were damaged as a result. [*id.*, ¶¶ 31-37].

Those allegations satisfy Rule 9(b). Once again, Mart's Declaration shows that Defendants understand the allegations against them and can formulate a detailed response. Defendants' motion to dismiss Plaintiffs' fraud claim pursuant to Rule 9(b) should therefore be denied.

> **E.      Plaintiffs' Conspiracy Claim is Plead with Requisite Particularity**

Defendants claim that "ascribing guilt by association is the Complaint's main strategy" and that "Rule 9(b)'s strict standard applies to each individual defendant's participation in the fraud." [Def. Mem., p. 16]. Defendants miscomprehend the applicable standard.

"[C]onspiracy claims are not subject to the same level of scrutiny under Rule 9(b) as are

general fraud claims." *Raimbeault v. Accurate Mach. & Tool*, No. 14-CIV-20136-BLOOM/Valle, 2014 U.S. Dist. LEXIS 140313, at *37 (S.D. Fla. Sep. 30, 2014). Instead, "[t]o satisfy the heightened pleading standard for conspiracy claims, the plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of an agreement between the defendants. This comports with the less stringent application of the Rule 9(b) heightened pleading standard "when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *Id.* (internal citations and quotations omitted).

Plaintiffs' civil conspiracy claim satisfies this standard by making detailed allegations of how Mart, Boies, and the entity defendants conspired to defraud Plaintiffs. Defendants' motion to dismiss Plaintiffs' conspiracy claim pursuant to Rule 9(b) should be denied.

**F.    Plaintiffs' Conspiracy Claim is Not Barred by the Intracorporate Conspiracy Doctrine.**

Finally, Plaintiffs' conspiracy claim is not "barred by the intracorporate conspiracy doctrine." "Under the intracorporate conspiracy doctrine, a corporation's officers, directors or employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Woodard-CM, LLC v. Sunlord Leisure Products, Inc.*, 2022 WL 2341802, *6 (S.D. Fla. 2022). The doctrine does not apply when "separate legal entities are involved in the alleged conspiracy." *Rossi v. Darden*, 2016 WL 11501449, *8 (S.D. Fl. 2016) (citing *Solyom v. World Wide Child Care Corp.*, 2015 WL 6167411, *2 (S.D. Fl. 2015) and *Regions Bank v. Caplan*, 2014 WL 5088889, *6 (M.D. Fl. 2015)). Plaintiffs allege that separate legal entities (with almost identical names) are involved in the conspiracy. Accordingly, Plaintiffs' conspiracy claim is not "barred by the intracorporate conspiracy doctrine."

**G.    In the Alternative, Plaintiffs Seek Leave to Replead**

In the event that Defendants' motion to dismiss is granted, either in whole or in part, Plaintiffs respectfully seek leave to replead to provide greater specificity concerning the time and substance of communications between Plaintiffs and Defendants concerning the investment.

## <u>Conclusion</u>

Plaintiffs respectfully request that the Court deny the Motion to Dismiss in its entirety. In the alternative, Plaintiffs request leave to conduct jurisdictional discovery or to amend.

Dated: June 4, 2024

/s/ Mark A. Levy
MARK A. LEVY
Florida Bar No. 121320
Email: mark.levy@brinkleymorgan.com
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, FL 33394
Telephone:  954-522-2200
Facsimile:  954-522-9123
Attorney for Plaintiffs


/s/ Gregory A. Blue
GREGORY A. BLUE
(Admitted *Pro Hac Vice*)
Email: gblue@lcb-law.com
LACHTMAN COHEN & BELOWICH LLP
245 Main Street, 2nd Floor
White Plains, NY 10601
Telephone: (914) 505-6654
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Memorandum of Law was served on this 4th day

of June, 2024 upon all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Mark A. Levy
MARK A. LEVY
Florida Bar No. 121320
Email: mark.levy@brinkleymorgan.com
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, FL 33394
Telephone:  954-522-2200
Facsimile:  954-522-9123
Attorney for Plaintiffs