# EXHIBIT "A"

## CALL OPTION AGREEMENT

THIS CALL OPTION AGREEMENT (this "Agreement"), effective as of September 27, 2019 (the "Effective Date"), is by and among in **LUMINASTRA, LTD,** a Nevis corporation, (the **"Company"**) and **JTC SKYWAVE INVESTMENTS, LTD,** a British Virgin Islands company (the **"Option Holder"**).

### RECITALS

WHEREAS, the Company would like to grant the Option Holder Call Options (as defined herein) to obtain additional equity in the Company; and

WHEREAS, the Option Holder and the Company have come to an understanding regarding the Call Option Price (as defined herein) of the Call Options.

NOW, THEREFORE, in consideration of the covenants set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.1   Definitions. For all purposes of this Agreement, except as otherwise expressly provided or unless the context clearly requires otherwise:

"Call Expiration Date" means any time prior to 11:59 p.m. (Nassau time) on the last business day immediately preceding 20 Years from the Effective Date.

"Option Price" shall mean an amount as set forth in Section 2.1 of this Agreement.

"Common Stock" means the Company's common stock, par value US$1.00.

"Liquidity Event" shall mean the completion by the Company of a transaction which provides holders of Common Stock or other any other class of stock with liquidity whether by means of a reverse take-over, initial public offering, merger, amalgamation, arrangement, take-over bid, insider bid, reorganization, joint venture, sale of all or substantially all assets, exchange of assets or similar transaction or other combination with a public corporation, if under such transaction, the common equity of the Company is exchanged for securities of the company, the securities of which are listed on a recognized stock exchange, including all globally recognizable stock exchanges.

"Stock" shall mean Common Stock in the Company.

## ARTICLE II
## GRANT OF CALL OPTION

Call Option. The Company hereby grants to the Option Holder the right and option to require the Company to sell, convey and transfer the Stock to the Option Holder in exchange for an amount equal to the Option Price as set forth in "Schedule A" attached hereto, corresponding to multiple rounds of funding in the Company (the "Call Option"). The Option Holder shall have the right up to a maximum of sixty percent (60%) of the total Stock in the Company. "Schedule A" shall be amended and initialed by the Company as the Option Holder exercises its right to the Call Option.

2.1 Exercise. The Call Option shall be exercised by a notarized declaration or by any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com, and delivered by the Option Holder ("Call Exercise Notice") specifying a date for closing of the purchase of the Stock which shall not be earlier than three (3) days or later than ten (10) days following the date of delivery of the Call Exercise Notice. All payments will be made in lawful money of the United States of America at the principal office of the Company, or at such other place as the Option Holder may from time to time designate in writing to the Company. Prepayment may be made without the written consent of the Company.

2.2 Term of Call Option. The Option Holder may exercise the Call Option by delivering a Call Exercise Notice to the Company at any time until the Call Expiration Date. Any exercise of the Call Option shall be irrevocable.

## ARTICLE III
## COVENANTS

3.1 Restrictions on Transfer. The Company covenants and agrees not to convey, sell or transfer any of the shares of Stock prior to the Call Expiration Date.

3.2 No Liens. Prior to the Call Expiration Date, The Company agrees to keep the Stock free of all liens, claims and encumbrances of every kind and character.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company represents and warrants to the Option Holder as follows:

4.1 Authorization of Agreement. This Agreement once executed constitutes a legal, valid and binding obligation of The Company, enforceable against the Company in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, fraudulent conveyance and other similar laws of general application affecting enforcement of creditors' rights generally, and (ii) the availability of the remedy of specific performance or injunctive or other forms of equitable relief may be subject to equitable defenses and would be subject to the discretion of the court before which any proceeding therefor may be brought.

4.2 No Conflicts. Neither the execution and delivery of this Agreement nor the consummation by the Company of the ttransaction contemplated herein will result in a violation of, or a default under, or conflict with, or require any consent, approval or notice under, any governing or constitutional document, contract, trust, commitment, agreement, obligation, understanding, arrangement or restriction of any kind to which the Company is a party or by which the Company is bound. Consummation by the Company of the transaction contemplated herein will not violate any provision of any judgment, order, decree, statute, law, rule or regulation applicable to the Company.

4.3 No Consents. No consent, approval, or authorization of, or declaration, filing or registration with, any person or entity is required to be made or obtained by the Company in connection with the execution, delivery or performance of this Agreement.

## ARTICLE V
## MISCELLANEOUS

5.1 Successors and Assigns. Except as otherwise provided herein, the terms and conditions of this Call Option will inure to the benefit of, and be binding upon, the respective successors and assigns of the parties; provided, however, that the Company may not assign its obligations under this Call Option without the written consent of the Options Holder, except as contemplated pursuant to a Liquidity Event. This Call Option is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or will confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Call Option.

5.2 Choice of Law; Venue. This Call Option, and all matters arising out of or relating to this Call Option, whether sounding in contract, tort, or statute will be governed by and construed in accordance with the internal laws of St. Kitts and Nevis, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of St. Kitts and Nevis.

5.3 Counterparts. This Call Option may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

5.4 Titles and Subtitles. The titles and subtitles used in this Call Option are included for convenience only and are not to be considered in construing or interpreting this Option.

5.5 Notices. All notices and other communications given or made pursuant hereto will be in writing and will be deemed effectively given: (a) upon personal delivery to the party to be notified; (b) when sent by email or confirmed facsimile; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications will be sent to the respective parties at the addresses

shown on the signature pages hereto (or to such email address, facsimile number or other address as subsequently modified by written notice given in accordance with this Section 5.5).

5.6     No Finder's Fee. Each party represents that it neither is nor will be obligated to pay any finder's fee, broker's fee or commission in connection with the transactions contemplated by this Option. The Holder agrees to indemnify and to hold the Company harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Holder or any of its officers, employees or representatives is responsible. The Company agrees to indemnify and hold the Holder harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

5.7     Expenses. Each party will pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of this Call Option.

5.8     Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Call Option, the prevailing party will be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

5.9     Entire Agreement; Amendments and Waivers. This Agreement constitute the full and entire understanding and agreement between the parties with regard to the subject hereof. Any term of this Call Option may be amended, and the observance of any term may be waived (either generally or in a particular instance and either retroactively or prospectively) with the written consent of the Company and the Holder. Any waiver or amendment effected in accordance with this Section 5.9 will be binding upon each future holder of this Call Option and the Company.

5.10 Severability. If one or more provisions of this Call Option are held to be unenforceable under applicable law, such provisions will be excluded from this Call Option and the balance of the Call Option will be interpreted as if such provisions were so excluded and this Call Option will be enforceable in accordance with its terms.

5.11 Further Assurances. From time to time, the parties will execute and deliver such additional documents and will provide such additional information as may reasonably be required to carry out the terms of this Call Option and any agreements executed in connection herewith.

5.12 Limitation on Interest. In no event will any interest charged, collected or reserved under this Call Option exceed the maximum rate then permitted by applicable law, and if any payment made by the Company under this Call Option exceeds such maximum rate, then such excess sum will be credited by the Holder as a payment of principal.

## SCHEDULE A
## AS AMENDED

| Funding Round | Option Amount | Total Equity | Date of Contribution | Initial |
|---|---|---|---|---|
| 0 | Initial Condition | 48% | 2019-09 | AM |
| 1 | $3,000,000.00 | 51% | 2019-10 | AM |
| 2 | $2,500,000.00 | 52% | 2020-08 | AM |
| 3 | $3,250,000.00 | 54% | 2021-03 | AM |
| 4 | $3,250,000.00 | 56% | 2021-10 | AM |
| 5 | $3,250,000.00 | 57% | 2022-04 | |

5.13 <u>Officers and Directors not Liable.</u> In no event will any officer or director of the Company be liable for any amounts due and payable pursuant to this Call Option.

5.14. <u>Incorporation of Recitals</u>. All of the recitals hereof are incorporated by this reference and are made a part hereof as though set forth at length herein.

5.15 <u>Approval.</u> The Company hereby represents that its board of directors, in the exercise of its fiduciary duty, has approved the Company's execution of this Call Option based upon a reasonable belief that the principal provided hereunder is appropriate for the Company after reasonable inquiry concerning the Company's financing objectives and financial situation. In addition, the Company hereby represents that it intends to use the principal of this Call Option primarily for the operations of its business, and not for any personal, family or household purpose.

5.16 <u>Waiver of Jury Trial.</u> EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS OPTION, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER REPRESENTS AND WARRANTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**Luminastra Ltd., a Nevis corporation**

By: _[signature]_
Name: Deanna Boies, Director

# CALL OPTION AGREEMENT

THIS CALL OPTION AGREEMENT (this "Agreement"), effective as of September 27, 2019 (the "Effective Date"), is by and among in **LUMINESCENCE, LLC**, a Illinois limited liability company (the **"Company"**) and **LUMINASTRA, LTD**, a Nevis corporation (the **"Option Holder"**).

## RECITALS

WHEREAS, the Company would like to grant the Option Holder Call Options (as defined herein) to obtain additional equity in the Company; and

WHEREAS, the Option Holder and the Company have come to an understanding regarding the Call Option Price (as defined herein) of the Call Options.

NOW, THEREFORE, in consideration of the covenants set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1   Definitions. For all purposes of this Agreement, except as otherwise expressly provided or unless the context clearly requires otherwise:

"Call Expiration Date" means any time prior to 11:59 p.m EST on the last business day immediately preceding 20 Years from the Effective Date.

"Option Price" shall mean an amount equal to the par value of the Membership Interest of the Company.

"Membership Interest" means the equity units in the Company, par value US$1.00.

"Liquidity Event" shall mean the completion by the Company of a transaction which provides holders of Membership Interest or other any other class of stock with liquidity whether by means of a reverse take-over, initial public offering, merger, amalgamation, arrangement, take-over bid, insider bid, reorganization, joint venture, sale of all or substantially all assets, exchange of assets or similar transaction or other combination with a public corporation, if under such transaction, the common equity of the Company is exchanged for securities of the company, the securities of which are listed on a recognized stock exchange, including all globally recognizable stock exchanges.

## ARTICLE II
## GRANT OF CALL OPTION

Call Option. The Company hereby grants to the Option Holder the right and option to require the Company to sell, convey and transfer the Membership Interest to the Option Holder in exchange for an amount equal to the Option Price (the "Call Option"). The Option Holder shall have the right up to a maximum of sixty percent (100%) of the total Membership Interest in the Company.

2.1 Exercise. The Call Option shall be exercised by a notarized declaration or by any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com, and delivered by the Option Holder ("Call Exercise Notice") specifying a date for closing of the purchase of the Membership Interest which shall not be earlier than three (3) days or later than ten (10) days following the date of delivery of the Call Exercise Notice. All payments will be made in lawful money of the United States of America at the principal office of the Company, or at such other place as the Option Holder may from time to time designate in writing to the Company. Prepayment may be made without the written consent of the Company.

2.2 Term of Call Option. The Option Holder may exercise the Call Option by delivering a Call Exercise Notice to the Company at any time until the Call Expiration Date. Any exercise of the Call Option shall be irrevocable.

## ARTICLE III
## COVENANTS

3.1 Restrictions on Transfer. The Company covenants and agrees not to convey, sell or transfer any of the Membership Interest prior to the Call Expiration Date.

3.2 No Liens. Prior to the Call Expiration Date, The Company agrees to keep the Membership Interest free of all liens, claims and encumbrances of every kind and character.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company represents and warrants to the Option Holder as follows:

4.1 Authorization of Agreement. This Agreement once executed constitutes a legal, valid and binding obligation of The Company , enforceable against the Company in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, fraudulent conveyance and other similar laws of general application affecting enforcement of creditors' rights generally, and (ii) the availability of the remedy of specific performance or injunctive or other forms of equitable relief may be subject to equitable defenses and would be subject to the discretion of the court before which any proceeding therefor may be brought.

4.2 No Conflicts. Neither the execution and delivery of this Agreement nor the consummation by the Company of the ttransaction contemplated herein will result in a violation

5.6    No Finder's Fee. Each party represents that it neither is nor will be obligated to pay any finder's fee, broker's fee or commission in connection with the transactions contemplated by this Option. The Holder agrees to indemnify and to hold the Company harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Holder or any of its officers, employees or representatives is responsible. The Company agrees to indemnify and hold the Holder harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

5.7    Expenses. Each party will pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of this Call Option.

5.8    Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Call Option, the prevailing party will be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

5.9    Entire Agreement; Amendments and Waivers. This Agreement constitute the full and entire understanding and agreement between the parties with regard to the subject hereof. Any term of this Call Option may be amended, and the observance of any term may be waived (either generally or in a particular instance and either retroactively or prospectively) with the written consent of the Company and the Holder. Any waiver or amendment effected in accordance with this Section 5.9 will be binding upon each future holder of this Call Option and the Company.

5.10    Severability. If one or more provisions of this Call Option are held to be unenforceable under applicable law, such provisions will be excluded from this Call Option and the balance of the Call Option will be interpreted as if such provisions were so excluded and this Call Option will be enforceable in accordance with its terms.

5.11    Further Assurances. From time to time, the parties will execute and deliver such additional documents and will provide such additional information as may reasonably be required to carry out the terms of this Call Option and any agreements executed in connection herewith.

5.12    Limitation on Interest. In no event will any interest charged, collected or reserved under this Call Option exceed the maximum rate then permitted by applicable law, and if any payment made by the Company under this Call Option exceeds such maximum rate, then such excess sum will be credited by the Holder as a payment of principal.

5.13    Officers not Liable. In no event will any officer of the Company be liable for any amounts due and payable pursuant to this Call Option.

5.14. <u>Incorporation of Recitals</u>. All of the recitals hereof are incorporated by this reference and are made a part hereof as though set forth at length herein.

5.15 <u>Approval.</u> The Company hereby represents that its board of directors, in the exercise of its fiduciary duty, has approved the Company's execution of this Call Option based upon a reasonable belief that the principal provided hereunder is appropriate for the Company after reasonable inquiry concerning the Company's financing objectives and financial situation. In addition, the Company hereby represents that it intends to use the principal of this Call Option primarily for the operations of its business, and not for any personal, family or household purpose.

5.16 <u>Waiver of Jury Trial.</u> EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS OPTION, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER REPRESENTS AND WARRANTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**Luminescence, LLC**
**an Illinois limited liability company**

By: _____
Name: Deanna Boies, Manager

## CALL OPTION AGREEMENT

THIS CALL OPTION AGREEMENT (this "Agreement"), effective as of September 27, 2019 (the "Effective Date"), is by and among in **KOKOPELLI LLC**, a Delaware limited liability company (the **"Company"**) and **LUMINASTRA, LTD**, a Nevis corporation (the **"Option Holder"**).

### RECITALS

WHEREAS, the Company would like to grant the Option Holder Call Options (as defined herein) to obtain additional equity in the Company; and

WHEREAS, the Option Holder and the Company have come to an understanding regarding the Call Option Price (as defined herein) of the Call Options.

NOW, THEREFORE, in consideration of the covenants set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.1   Definitions. For all purposes of this Agreement, except as otherwise expressly provided or unless the context clearly requires otherwise:

"Call Expiration Date" means any time prior to 11:59 p.m EST on the last business day immediately preceding 20 Years from the Effective Date.

"Option Price" shall mean an amount equal to the par value of the Membership Interest of the Company.

"Membership Interest" means the equity units in the Company, par value US$1.00.

"Liquidity Event" shall mean the completion by the Company of a transaction which provides holders of Membership Interest or other any other class of stock with liquidity whether by means of a reverse take-over, initial public offering, merger, amalgamation, arrangement, take-over bid, insider bid, reorganization, joint venture, sale of all or substantially all assets, exchange of assets or similar transaction or other combination with a public corporation, if under such transaction, the common equity of the Company is exchanged for securities of the company, the securities of which are listed on a recognized stock exchange, including all globally recognizable stock exchanges.

## ARTICLE II
## GRANT OF CALL OPTION

Call Option. The Company hereby grants to the Option Holder the right and option to require the Company to sell, convey and transfer the Membership Interest to the Option Holder in exchange for an amount equal to the Option Price (the "Call Option"). The Option Holder shall have the right up to a maximum of sixty percent (100%) of the total Membership Interest in the Company.

2.1 Exercise. The Call Option shall be exercised by a notarized declaration or by any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com, and delivered by the Option Holder ("Call Exercise Notice") specifying a date for closing of the purchase of the Membership Interest which shall not be earlier than three (3) days or later than ten (10) days following the date of delivery of the Call Exercise Notice. All payments will be made in lawful money of the United States of America at the principal office of the Company, or at such other place as the Option Holder may from time to time designate in writing to the Company. Prepayment may be made without the written consent of the Company.

2.2 Term of Call Option. The Option Holder may exercise the Call Option by delivering a Call Exercise Notice to the Company at any time until the Call Expiration Date. Any exercise of the Call Option shall be irrevocable.

## ARTICLE III
## COVENANTS

3.1 Restrictions on Transfer. The Company covenants and agrees not to convey, sell or transfer any of the Membership Interest prior to the Call Expiration Date.

3.2 No Liens. Prior to the Call Expiration Date, The Company agrees to keep the Membership Interest free of all liens, claims and encumbrances of every kind and character.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company represents and warrants to the Option Holder as follows:

4.1 Authorization of Agreement. This Agreement once executed constitutes a legal, valid and binding obligation of The Company, enforceable against the Company in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, fraudulent conveyance and other similar laws of general application affecting enforcement of creditors' rights generally, and (ii) the availability of the remedy of specific performance or injunctive or other forms of equitable relief may be subject to equitable defenses and would be subject to the discretion of the court before which any proceeding therefor may be brought.

4.2 No Conflicts. Neither the execution and delivery of this Agreement nor the consummation by the Company of the ttransaction contemplated herein will result in a violation

of, or a default under, or conflict with, or require any consent, approval or notice under, any governing or constitutional document, contract, trust, commitment, agreement, obligation, understanding, arrangement or restriction of any kind to which the Company is a party or by which the Company is bound. Consummation by the Company of the transaction contemplated herein will not violate any provision of any judgment, order, decree, statute, law, rule or regulation applicable to the Company.

4.3 <u>No Consents.</u> No consent, approval, or authorization of, or declaration, filing or registration with, any person or entity is required to be made or obtained by the Company in connection with the execution, delivery or performance of this Agreement.

### ARTICLE V
### MISCELLANEOUS

5.1   <u>Successors and Assigns.</u> Except as otherwise provided herein, the terms and conditions of this Call Option will inure to the benefit of, and be binding upon, the respective successors and assigns of the parties; provided, however, that the Company may not assign its obligations under this Call Option without the written consent of the Options Holder, except as contemplated pursuant to a Liquidity Event. This Call Option is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or will confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Call Option.

5.2   <u>Choice of Law; Venue.</u> This Call Option, and all matters arising out of or relating to this Call Option, whether sounding in contract, tort, or statute will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware.

5.3   <u>Counterparts.</u> This Call Option may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

5.4   <u>Titles and Subtitles.</u> The titles and subtitles used in this Call Option are included for convenience only and are not to be considered in construing or interpreting this Option.

5.5   <u>Notices.</u> All notices and other communications given or made pursuant hereto will be in writing and will be deemed effectively given: (a) upon personal delivery to the party to be notified; (b) when sent by email or confirmed facsimile; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications will be sent to the respective parties at the addresses shown on the signature pages hereto (or to such email address, facsimile number or other address as subsequently modified by written notice given in accordance with this Section 5.5).

5.6     No Finder's Fee. Each party represents that it neither is nor will be obligated to pay any finder's fee, broker's fee or commission in connection with the transactions contemplated by this Option. The Holder agrees to indemnify and to hold the Company harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Holder or any of its officers, employees or representatives is responsible. The Company agrees to indemnify and hold the Holder harmless from any liability for any commission or compensation in the nature of a finder's or broker's fee arising out of the transactions contemplated by this Call Option (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

5.7     Expenses. Each party will pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of this Call Option.

5.8     Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Call Option, the prevailing party will be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

5.9     Entire Agreement; Amendments and Waivers. This Agreement constitute the full and entire understanding and agreement between the parties with regard to the subject hereof. Any term of this Call Option may be amended, and the observance of any term may be waived (either generally or in a particular instance and either retroactively or prospectively) with the written consent of the Company and the Holder. Any waiver or amendment effected in accordance with this Section 5.9 will be binding upon each future holder of this Call Option and the Company.

5.10    Severability. If one or more provisions of this Call Option are held to be unenforceable under applicable law, such provisions will be excluded from this Call Option and the balance of the Call Option will be interpreted as if such provisions were so excluded and this Call Option will be enforceable in accordance with its terms.

5.11    Further Assurances. From time to time, the parties will execute and deliver such additional documents and will provide such additional information as may reasonably be required to carry out the terms of this Call Option and any agreements executed in connection herewith.

5.12    Limitation on Interest. In no event will any interest charged, collected or reserved under this Call Option exceed the maximum rate then permitted by applicable law, and if any payment made by the Company under this Call Option exceeds such maximum rate, then such excess sum will be credited by the Holder as a payment of principal.

5.13    Officers not Liable. In no event will any officer of the Company be liable for any amounts due and payable pursuant to this Call Option.

5.14. <u>Incorporation of Recitals</u>. All of the recitals hereof are incorporated by this reference and are made a part hereof as though set forth at length herein.

5.15 <u>Approval.</u> The Company hereby represents that its board of directors, in the exercise of its fiduciary duty, has approved the Company's execution of this Call Option based upon a reasonable belief that the principal provided hereunder is appropriate for the Company after reasonable inquiry concerning the Company's financing objectives and financial situation. In addition, the Company hereby represents that it intends to use the principal of this Call Option primarily for the operations of its business, and not for any personal, family or household purpose.

5.16 <u>Waiver of Jury Trial.</u> EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS OPTION, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER REPRESENTS AND WARRANTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**Kokopelli, LLC**
**a Delaware limited liability company**

By: _/s/ Andrew Mart_

Name: Andrew Mart, Manager