**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

CASE NO. 9:24-cv-80499-RLR/REINHART

JTC SKYWAVE INVESTMENTS LTD,
and HARALD McPIKE,

        Plaintiffs,

v.

ANDREW N. MART, DEANNA BOIES,
LUMINESCENCE LLC, LUMINESCENCE
LLC, and LUMINASTRA LLC,

        Defendants.

_____/

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Homer Bonner

1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738
Luis Delgado, Esq.
ldelgado@homerbonner.com
Christopher J. King, Esq.
cking@homerbonner.com
Antonio M. Hernandez, Jr. Esq.
ahernandez@homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

## **Table of Contents**

A.    This case checks all the boxes for a forum non conveniens dismissal. .................................. 1

   i.    Deference for McPike's choice of forum is inarguably lessened. ...................................... 1

  ii.    The private and public interests strongly favor dismissal..................................................... 2

B.    The lack of personal jurisdiction over four Defendants is beyond dispute............................ 8

C.    McPike cannot explain the deficiencies of his Complaint....................................................... 9

Conclusion ..................................................................................................................................... 10

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

Three unrebutted facts should decide Defendants' forum non conveniens defense: McPike and JTC Skywave (collectively "McPike") are foreign parties; the alleged fraud occurred in the Bahamas; and the alleged injury occurred in the Bahamas. Harald McPike is unable or unwilling to provide a declaration disputing this. On top of these unrebutted facts is the irrefutable fact that the Call Option Agreement McPike claims he was fraudulently induced into is a Nevis contract governed by Nevis law granting an option to buy shares in a Nevis company. This dispute has nothing to do with the United States. McPike tries to morph his theories into disputes over real estate in Illinois, or U.S. bank records and other peripheral matters. But he cannot deny the overwhelming number of witnesses in the Bahamas and Nevis, and the substantial evidence in the hands of third parties overseas. This Court should dismiss for forum non conveniens. If it does not, it should dismiss for lack of personal jurisdiction and failure to state a claim for relief.

**A.  This case checks all the boxes for a forum non conveniens dismissal.**

McPike concedes Nevis and the Bahamas are adequate and available forums and there are no obstacles to refiling in either. That leaves only the private and public interest factors, and they are decisively in Defendants' favor.

**i.     Deference for McPike's choice of forum is inarguably lessened.**

McPike's lead argument is that Defendants' U.S. residency is the supposed "elephant in the room" that should decide everything. If that were true, then *Piper Aircraft*, a case against U.S. manufacturers of planes and propellers, would have been a short opinion with a very different result. But the defendants' U.S. citizenship played no part in the analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-255 (1981). The focus is the *plaintiffs*' citizenship. McPike cites *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020), but the "elephant in the room" in *Otto Candies* was not simply that the defendant, Citibank, was a U.S. citizen. It was that Citibank is nationwide bank being sued by two U.S. citizen plaintiffs for having supervised a scheme to defraud from its New York headquarters. *Id.* at 1343. In contrast, McPike and JTC are foreign Plaintiffs, and Mart was a permanent resident of the Bahamas when he discussed the Call Option Agreement with McPike. *Otto Candies* stands for the principle that "[w]hen an American plaintiff sues an American defendant for conduct allegedly occurring in the United States, it should not be easy for the defendant to

HOMER BONNER JACOBS ORTIZ, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

obtain a *forum non conveniens* dismissal." *Id*. at 1343 (underline added). Those are not the facts here, and *Otto Candies* distinguished other decisions that closely resemble this case. In *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785 (5th Cir. 2007), "the operative fact was not that the plaintiff did business with a foreign entity, but that it sued for an *'injury occurring in a foreign country'* and that the '*alleged torts all occurred in Mexico.*'" *Otto Candies*, 963 F.3d at 1341 (emphasis added, quoting *DTEX*, 508 F.3d at 795, 802). *Otto Candies* similarly distinguished *Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993), in which American plaintiffs "invested in an Israeli financial institution, alleged that they were defrauded 'in Jerusalem' by the Israeli defendants," and that it "was in Israel that the defendants hatched their alleged illegal scheme, notwithstanding some 'peripheral' activities in the United States." *Otto Candies*, 963 F.3d at 1341. *DTEX* and *Sussman* are this case, only without any U.S. plaintiff.

*Otto Candies* stresses an obvious point—the *place of the alleged fraud* has primary importance. In this case, there is no U.S. fraud *or* domestic plaintiff—a far easier case. The defendants in *Sussman* may have been foreign, but that is not significant. The important point in *DTEX* and *Sussman* was that the plaintiffs were American, and *still* the courts dismissed. *Otto Candies* teaches the level of deference at the outset affects the other factors. *See Otto Candies*, 963 F.3d at 1346. The question there was how to apportion deference when two plaintiffs were U.S. citizens. That is not the issue here—McPike and JTC are foreign. McPike argues he gets *some* deference, rather than the minimal or no deference Defendants request in their motion. Defendants' point is that McPike has no U.S. ties and only wants to block Defendants' access to crucial witnesses and financial evidence. McPike insists his motives are pure, since he found Florida addresses tied to Mart and Boies and the Florida Luminescence. But this Court does not need to investigate to the end McPike's motives for suing in the U.S. Under any analysis, McPike and JTC get lesser deference.

  **ii.  The private and public interests strongly favor dismissal.**

The "elephant in the room" is not Defendants' U.S. citizenship but the fact that financial discovery and crucial witnesses are wholly outside of Defendants' reach in the U.S. McPike glosses over the enumerated fraud elements relevant to the private factors, neglecting to mention that every one points to the Bahamas and Nevis. The first two, that

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

"the representor knew or should have known that the representation was false," and "intended to induce another party to act in reliance on the false statement," could have *only* happened in the Bahamas. The other two, that the plaintiff "acted in justifiable reliance on the representation and was injured as a result," indisputably happened in the Bahamas. None of the relevant evidence is in the United States. On damages, for example, Defendants intend to show that for every dollar paid to Mart for the option and his services, McPike and his companies earned several dollars back. Because all or most of McPike's companies who used and benefited from the services are foreign and nonparties, Defendants face enormous obstacles in being able to obtain that evidence from a U.S. court. The same goes for the more than 20 foreign witnesses Mart identifies in his declaration. It makes no sense to transport so many foreign witnesses to the U.S. when there are alternative forums where the witnesses are already located. Defendants are in the same situation as the defendants in *Lambert v. Melia Hotels International, S.A.*, 526 F. Supp. 3d 1207 (S.D. Fla. 2021)—"the witnesses and record holders are beyond the subpoena power of this Court. This would undoubtedly be both inconvenient and expensive." *Id.* at 1218.

McPike's only response is not to dispute the overseas witnesses but to brush them aside as unimportant and claim Mart supposedly has not given enough detail to prove each witness's relevance. The Supreme Court has rejected McPike's argument "that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum," ruling "such detail is not necessary." *Piper Aircraft,* 454 U.S. at 258. McPike offers no evidence of his own or explanation of why these witnesses would not be relevant. He calls them witnesses to "unrelated work." ECF No. 25 at 8. In fact, they can testify to Mart's and McPike's longtime relationship and the relevant events leading up to the Call Option Agreement, as Mart details in his declaration. ECF No. 18-1 at 6-8. None of it was "unrelated work." McPike may want this to be a "he-said/he-said" case in which only McPike and Mart give their accounts of the facts and the only evidence is a handful of emails and tangential bank records. But McPike does not get to dictate how we defend the case. The Eleventh Circuit has made clear that forum non conveniens analysis "must contemplate more than the [plaintiffs'] theories of liability; we must also consider the

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

[defendants'] theories." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1332 (11th Cir. 2011) (quotation omitted). McPike notes that Defendants called him the "central witness." But that does not exclude other highly relevant witnesses who can corroborate Mart's recollection of communications, reinforce their close relationship in the Bahamas, and confirm the extraordinary wealth McPike and his companies realized from Mart's services. Those witnesses indisputably are in the Bahamas. None are in the United States.

McPike contends the documentary evidence can be imported from the Bahamas, but that presumes Defendants would easily be able to discover it in the first place from a U.S. jurisdiction that has no power over third parties. McPike conspicuously says nothing about his financials and those of his companies. McPike's records have extraordinary relevance, as they demonstrate McPike and his non-party companies profited royally from Mart's projects and services. Instead, McPike cites bank records in Illinois for Luminastra, LLC, which have no relevance in this case beyond the undisputed fact that the four payments at issue were wired there by third-parties. The out-of-state bank records of the Florida-registered Luminescence have no relevance to speak of. Holding the accounts was its only business. The same is true of real estate owned by the Illinois-registered Luminescence. These U.S. accounts and real estate have only the most remote of relevance to this case, if even that. Mart mentions them in his declaration to make that very point, and to highlight that the relevant events happened overseas. That certain projects and accounts were in the U.S. is entirely "peripheral" to the main disputes in this case. *See Sussman*, 801 F. Supp. at 1074. In contrast, there is no escaping the fact that the relevant financial discovery Defendants need is in the hands of third parties overseas.

McPike takes Mart's statement that Mart can as easily travel to the Bahamas as Florida as a purported admission that Mart supposedly faces no inconvenience in the U.S. ECF No. 25 at 5. The inconvenience is not *Mart's* ability to travel, but the fact that he and the other Defendants have no easy access to abundant evidence and witnesses located overseas. McPike vaguely claims "most" of the witnesses Mart lists are employees of McPike or JTC or their "affiliates." He does not specify which ones. Mart's declaration identifies only two out of 13 primary witnesses in the Bahamas who assuredly are current JTC employees or representatives—McPike himself and JTC's corporate representative. The

4

CASE NO. 9:24-cv-80499-RLR/REINHART

private interest factors on this issue are the "availability of *compulsory process* for attendance of unwilling, and the *cost* of obtaining attendance of willing witnesses." *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331-32 (S.D. Fla. 1998) (emphasis added). There is no dispute witnesses in the Bahamas are beyond "compulsory process." Many witnesses, especially employees of McPike's third-party companies, are unlikely to be willing to testify against wealthy and powerful McPike in a United States court. McPike and JTC purport to "commit to make themselves, corporate representatives, and current employees available for discovery." ECF No. 25 at 7. But they present no evidence of this commitment—it is only their counsel claiming this, rather than McPike himself in a declaration. Moreover, the supposed commitment is only for McPike's and JTC's current employees, and not the employees of *affiliates*. And it is only for *discovery* and not trial, which is prejudicial. A vague commitment for McPike to produce select witnesses under his control is small comfort. McPike has been credibly accused of improperly influencing witnesses and failing to preserve evidence. *E.g.*, Mem. of Law in Supp. of Def's Mot. in Lim. No. 4 regarding McPike's Spoliation of Docs., *McPike v. Zero-Gravity Holdings, Inc.*, No. 1:17-cv-562-TSE/JFA, ECF No. 157 (E.D. Va. Mar. 13, 2018), ECF No. 157 (exhibits omitted), Ex. A hereto. In all events, it is wholly impractical and burdensome to force Defendants to bear the costs and difficulties of bringing a dozen or more foreign witnesses to the U.S. The most important private interest factor is strongly in Defendants' favor.

Plaintiffs cite cases on the convenience of travel from the Bahamas, but these involved U.S. plaintiffs who were owed substantial deference on their choice of forum, and the witnesses had far more ties to the U.S. *See Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246 (S.D. Fla. 2001); *Ward v. Kerzner Int'l Hotels, Ltd.*, No. 03-23087-CIV-JORDAN, 2005 U.S. Dist. Lexis 11081 (S.D. Fla. Mar. 30, 2005). Other decisions on the ease of access to documents in the Bahamas are inapposite, as they deal with motions to transfer. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268 (S.D. Fla. 2020); *Ritter v. Metro. Cas. Ins. Co.*, No. 4:19-CV-10105-KMM, 2019 U.S. Dist. LEXIS 227839 (S.D. Fla. Decl. 3, 2019). The Supreme Court has made clear that motion to transfer case law is "simply inapplicable to dismissals on grounds of *forum non conveniens.*" *Piper Aircraft*, 454 U.S. at 253.

HOMER BONNER JACOBS ORTIZ, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

McPike finally claims that the enforceability of judgments factor supposedly does not support dismissal because Defendants have not identified the location of assets. In fact Mart has identified American bank accounts owned by the entity Defendants, and both Mart and Boies both identify the States where they live and work. The law does not require detailed affidavits disclosing an exhaustive list of personal assets for a forum non conveniens dismissal. *Piper Aircraft,* 454 U.S. at 258. The cases Defendants cite involved issues where a judgment could not be enforced abroad, and it was unknown in what countries the defendant's assets might be located. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 375 (5th Cir. 1992). There is no dispute like that in this case. A money judgment from the Bahamas or Nevis would indisputably be enforceable in the U.S., where Defendants reside. *See* Fla. Stat. § 55.601 *et seq.*; 735 ILCS 5/12-618 *et seq.*; Cal. Civ. Proc. Code §§ 1713-1725 (adopting the Uniform Foreign Money-Judgment Recognition Act). This factor also weighs in favor of dismissal.

For the public interests, the only thing McPike can point to is that funds were sent to the United States. But that occurred after the alleged inducements in the Bahamas, and as a result of McPike and nonparties electing to wire money to a U.S. account rather than to the Nevis address listed in the invoices. *See* ECF No. 18-1 at 13-15. The *Sussman* court rejected that same argument. *Sussman*, 801 F. Supp. at 1074 (finding "[t]he use of its New York branch by one of the defendants … to route the loan proceeds … cannot be regarded, in the overall scheme of things, as other than peripheral"). McPike contends the alleged fraud "emanated at least in part from people and entities in the United States." ECF No. 25 at 10. But all he can point to is that Boies signed the agreement in the U.S. The sole alleged "fraudulent" act on U.S. soil, therefore, is this:

**Luminastra Ltd., a Nevis corporation**

By: _____
Name: Deanna Boies, Director

ECF No. 1-3 at 7. The signatory is "**Luminastra Ltd., a Nevis corporation**," not Deanna Boies, who signed solely as a Director. There is no plausible allegation anything in this signature block is false or misleading. Nor are any of the alleged misrepresentations McPike claims induced him and JTC contained in the Call Option Agreement itself, which

6

CASE NO. 9:24-cv-80499-RLR/REINHART

Boies had no role in negotiating or drafting, *see* ECF No. 18-2 at 2. The signature is wholly peripheral to the alleged fraud. The same is true of the corporate filings McPike attaches listing Boies as a director or manager of U.S. entities. Exaggerating ministerial corporate acts and filings in the U.S. that have the most remote ties to alleged misrepresentations in the Bahamas does not give the U.S. an interest.

McPike argues he needs more discovery, but he has no basis for it. The key private interest factors are unrebutted or conceded. McPike argues a Skype recording supposedly disputes Boies's declaration that she had no role in the operation of the Defendant entities. The Skype recording, in which Boies was one of 18 speakers, involved mostly nonparty companies.[1] Boies confirms that she is normally "not needed" and "typically stays out it," unless an issue were to arise with vendors. That does not conflict with her declaration. None of it affects the private interests. It is totally remote to the alleged fraud.

McPike's other big problem is the governing Nevis law. The application of foreign law "*weighs heavily in favor of dismissal*" when the plaintiffs are foreign, a point driven home by the case McPike cites, *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097 (11th Cir. 2004). *Id.* at 1104 n.10 (collecting cases, emphasis added). McPike argues the choice of law clause would not apply to his claims. The clause's broad language, applying to "*all matters arising out of or relating to* this Call Option, whether sounding in contract, *tort*, or statute," refutes that. ECF No. 1-3 at 4 (emphasis added). So does Defendants' Nevis law expert, who opines that the provision "captures" McPike's claims. ECF No 18-3. McPike argues Defendants have not shown Nevis and the Bahamas would be different than American law. But Defendants are not required to prove differences in the law. Forum non conveniens "is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft*, 454 U.S. at 251. The public interest points to the "forum that is at home with the law that must govern the action" and avoids "unnecessary problems in conflict of laws, or in the application of foreign law." *Id*. at 241 n.6. The fact is that Nevis law applies, and litigating foreign law in the U.S. against foreign Plaintiffs is burdensome. This is a textbook case for forum non conveniens dismissal.

---

[1] *See* https://www.dropbox.com/scl/fi/vn5arlyf2dj38jieckmwl/QuantumRoot-Introductions-Complete.mov?rlkey=ztnsot2jnklyd7ihsuq9egcfo&e=1&dl=0 (last visited June 26, 2024).

HOMER BONNER JACOBS ORTIZ, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

**B.   The lack of personal jurisdiction over four Defendants is beyond dispute.**

McPike ignores the threshold pleading defect on personal jurisdiction. The Complaint is silent on Mart's citizenship, *admits* Boies resides in Illinois, and contains no facts to support any business activity or tortious conduct in Florida that could support long-arm jurisdiction. The burden never shifted for Defendants to present contrary evidence, therefore. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Defendants presented that evidence anyway—Mart asserts in his declaration he relocated from the Bahamas to California in 2023, and Boies asserts in her declaration she moved from Florida to Illinois in 2019. McPike claims that this is not evidence, but that is baseless. He cites cases finding that an affidavit making "conclusory statements that the [defendants] are not subject to jurisdiction in Florida" is insufficient. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1275 n.14 (11th Cir. 2002). Mart and Boies assert factual statements about when and where they moved, not blanket denials of personal jurisdiction. McPike, who worked side-by-side with Mart in the Bahamas for 20 years, rebuts none of Mart's assertions. Rather, McPike's lawyer, who has no personal knowledge of Mart's life in the Bahamas or his 2023 move to California, submits a declaration attaching old voting and driving records to try to dispute what is unrebutted and irrefutable.

McPike's "no evidence" argument is in fact an argument that Mart and Boies did not preemptively submit corroborating evidence. That was unnecessary since the Complaint contained no contrary allegations. *See Mazer*, 556 F.3d at 1274. But since McPike for the first time appears to be disputing their citizenship, Mart backs up his prior declaration with evidence of his flight from the Bahamas in June 2023 with 18 bags and his minor children, receipts from his movers from the same time period showing shipment of his possessions from the Bahamas to California, previous Bahamas Driver's licenses and car insurance, and copies of his current California lease and electric bills. Ex. B hereto. That Mart kept a Florida driver's license and, before moving to California, voted by mail (with one exception in 2016) in federal elections in Florida is not inconsistent with the unrebutted reality of his life as an overseas resident. What matters for general jurisdiction is his citizenship at the time the case was filed, in January 2024. *Travelers Cas. & Sur. Co. v. Telstar Constr. Co.*, 252 F. Supp. 2d 917, 935 n.9 (D. Ariz. 2003) (ruling "[p]ersonal jurisdiction is determined at the

8

CASE NO. 9:24-cv-80499-RLR/REINHART

time the cause of action is brought") (citation omitted); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004) (confirming "the jurisdiction of the Court depends upon the state of things at the time of the action brought") (citation omitted). That indisputably is California. For specific jurisdiction, it is unrebutted that he resided and worked fulltime with McPike in the Bahamas during the relevant period of the alleged fraud. Only McPike himself could dispute Mart's declaration on that fact, and he did not.

Boies's lease of an Illinois apartment and utility payments began in June 2019. A U-Haul receipt shows her move from Tallahassee to Illinois in August 2019. Ex. C hereto. Boies confirms that she signed the Call Option Agreement in Illinois. *Id.* The Complaint's admission that she resides in Illinois is binding. *E.g.*, *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983). McPike's speculation that she may have signed the Call Option Agreement in Florida is inaccurate—she was in Illinois. Regardless of where she was, merely executing a contract on behalf of a Nevis entity is not plausibly "a general course of business activity in the state for pecuniary benefit," or "a tortious act within this state." *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018). McPike has no argument against dismissal of Mart, Boies, Luminastra, and the Illinois-registered Luminescence for lack of personal jurisdiction.

### C.  McPike cannot explain the deficiencies of his Complaint.

McPike is suing to harass and gain leverage. Nowhere is that more evident than his inclusion of Boies in this case. He is suing her for conspiracy to defraud because she signed a contract and agreed to be a manager and director of various entities. Under McPike's theory, any ministerial or secretarial act that consummates an allegedly fraudulently induced contract makes one a co-conspirator in fraud. Pleading requirements and rules against shotgun pleadings and intracorporate conspiracy claims forbid such absurd theories. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007) (finding "nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy"). The theories against Mart are similarly deficient. He is accused of joining forces with Boies without any description of how they worked together to misrepresent "business operations," a meaningless label.

McPike argues in defense of his pleading that Defendants supposedly must know

9

CASE NO. 9:24-cv-80499-RLR/REINHART

what they are being sued for because Mart addressed select allegations in his declaration. That is not the standard. A Rule 12(b)(6) motion is determined "by the four corners of a complaint and any exhibits attached thereto." *E.g.*, *Bliss v. Camden Prop. Tr. Corp.*, No. 23-61659-CV- MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 200824, at *5 (S.D. Fla. Nov. 8, 2023). A post-pleading declaration plays no part in the analysis. McPike contends that group pleading in which he ties Boies and entity Defendants together with Mart are permissible, but the case law he cites alleges alter ego entities totally controlled by a single individual. *See Spanakos v. Aronson*, No. 17-80965-CV, 2018 U.S. Dist. LEXIS 238536, at *7-8 (S.D. Fla. Apr. 2, 2018). That is not the case here, where McPike lumps Boies in with Mart for no more reason than her role in the companies and sues other entities only because Mart supposedly lied about them. McPike dismisses the intracorporate conspiracy doctrine on the supposed basis that separate companies are sued. But the companies are admittedly closely-held, all owned by Mart, with Boies as manager or director. It is legally impossible for entities to conspire with their owners and directors. That they own and manage different entities does not change that. The case McPike cites dismisses a conspiracy count on the analogous basis that "subsidiaries of parent corporations are not generally considered separate legal entities for the purpose of the intra-corporate conspiracy doctrine." *Rossi v. Darden*, No. 16-21199-CIV-ALTONAGA, 2016 U.S. Dist. LEXIS 195751, at *30 (S.D. Fla. July 19, 2016). So too for closely-held companies that share the same sole owner and director.

This Court should dismiss the Complaint. McPike's summary request to amend is insufficient, and the Court should reject it since McPike offers no explanation how the defects could be cured. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (holding "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

## Conclusion

The Court should dismiss this case.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO. 9:24-cv-80499-RLR/REINHART

Dated: June 26, 2024

Respectfully submitted:



Attorneys for Defendants
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:     /s/ *Antonio M. Hernandez, Jr.*
        Luis Delgado, Esq.
        Email: ldelgado@homerbonner.com
        Florida Bar No. 475343
        Christopher J. King, Esq.
        Email: cking@homerbonner.com
        Florida Bar No.: 123919
        Antonio M. Hernandez Jr., Esq.
        Email: ahernandez@homerbonner.com
        Florida Bar No.: 0117756

HOMER BONNER Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com